[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11094
Non-Argument Calendar

_____

D.C. Docket No. 7:19-cr-00220-LSC-SGC-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEMARKUS VONSHA THOMPSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 31, 2021)

Before NEWSOM, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Jemarkus Thompson, Ladarius Watson, and Quartais Rodgers committed two Hobbs Act robberies.  Thompson was the getaway driver; he drove Watson's car and waited outside while Watson and Rodgers robbed two separate businesses at gunpoint.  All three of them were arrested and indicted on robbery and brandishing firearms counts.  Thompson pleaded not guilty and went to a jury trial, but Watson and Rodgers pleaded guilty and testified against Thompson.  Thompson was convicted and sentenced to 214 months imprisonment, which was the bottom of his guidelines range.  Watson was sentenced to 180 months imprisonment and Rodgers was sentenced to 95 months imprisonment.

This is Thompson's appeal of his sentence.  He contends that the district court did not adequately explain its reasons for imposing his sentence and that his sentence is substantively unreasonable because it is longer than the sentences of Watson and Rodgers.  We disagree.

## I.

Watson and Rodgers spent a day driving around in Watson's car doing drugs — ecstasy and marijuana.  Watson had an AR-15 in the back seat and Rodgers had a pistol with him.  When night fell, they decided to rob someone.

Watson called Thompson and the three of them met shortly after 9 p.m. Thompson got in the driver's seat of Watson's car and drove the trio to a convenience store.  Once there, Watson and Rodgers got out of the car, entered the

store armed with the guns, and robbed the cashier at gunpoint. Watson shoved the barrel of the AR-15 into the cashier's chest while Rodgers took money from the cash register. Thompson stayed in the car.

After Watson and Rodgers returned to the car, they decided to rob a Subway restaurant. Again, Thompson drove them there and waited in the car while Watson and Rodgers went and robbed the owner at gunpoint. During that robbery Watson and Rodgers became impatient with the speed at which the owner was opening the cash register, which led Watson to hit the owner in the back of his neck with the AR-15 and Rodgers to hit him in the back of the neck with the pistol. They returned to the car and Thompson drove them to a nearby apartment complex.

Shortly after that, and before they could divide the money among themselves as they had planned to do, they were arrested together. While being interviewed by the police, Watson initially denied his involvement in the robberies but then admitted to it and told the police that Thompson had knowingly been the getaway driver. Rodgers also confessed and said the same thing about Thompson's role. Thompson denied involvement, telling the police that he had entered the car only after the robberies and that he had not known about them.

All three were indicted for two counts of aiding and abetting each other in committing Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b)(1), and two counts of aiding and abetting each other in brandishing firearms during the

3

robbery, in violation of 18 U.S.C. 924(c)(1)(A)(ii).  Watson and Rodgers both pleaded guilty, but Thompson did not; instead, he went to a jury trial where Watson and Rodgers testified against him.  He was convicted on all counts.

When it came to sentencing, certain statutory mandatory minimums applied to all three defendants.  The two brandishing firearm counts each required a 7-year (or 84 month) mandatory minimum term of imprisonment to run consecutive to all other sentences.  See 18 U.S.C. § 924(c)(1)(A)(ii); id. § 924(c)(1)(D)(ii).  That meant they all had a mandatory minimum of 168 months imprisonment.  Those counts also carried a statutory maximum of life imprisonment.

Because Watson and Rodgers had pleaded guilty, cooperated with, and assisted the government, the government moved for them to get sentence reductions that would allow them to be sentenced below the mandatory minimum. See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1.  The government requested that each of them be sentenced to 95 months imprisonment.  The court adopted that recommendation as to Rodgers.  Watson, on the other hand, was sentenced to 180 months because the court found that he had been involved in three additional robberies that were not part of the conduct he pleaded guilty to.  See generally United States v. Watson, 842 F. App'x 460 (11th Cir. 2021) (affirming sentence).

As for Thompson, his PSR noted that he was subject to the mandatory minimum 168 months imprisonment for the brandishing firearms counts.  And on

4

the two Hobbs Act robbery counts, the PSR recommended an advisory guidelines range of 46 to 57 months, which the district court adopted. That range was based on an offense level of 22 and a criminal history category of II; he was in that criminal history category based on a previous conviction for receiving stolen property.

At the sentence hearing, which came after Watson and Rodgers had been sentenced, Thompson requested a downward variance to a below-guidelines sentence of time served for the Hobbs Act robbery counts. Reiterating what he had argued in a sentencing memorandum, Thompson (through his attorney) told the court that he "still maintains his innocence." And he argued that his sentence should be lower than the sentences given to Watson and Rodgers because he "never got out of the car during the robberies" and had not engaged in the violent conduct that his codefendants had.

The court considered and rejected that argument. It stated that "while it may seem to be and it is a legitimate argument and I hear it often that this person was just the get-away driver," the driver "is, nonetheless, responsible for the crime." "But for the get-away driver," the court stated, "the people that committed the crime would stay at the premises or have to run down the street with the guns in hand and cash and what-not and be more quickly apprehended." And the court applied that reasoning to Thompson, stating that "[b]ut for the get-away driver,

instead of having two of these robberies, there would have just been one of these robberies because they would have been running down the street and would certainly be caught by the police." The court rounded out the thought: "The get-away driver set into motion by driving the vehicle the violent attacks" committed by his codefendants.

The court also considered the government's recommendation, which was to sentence Thompson to 25 years (300 months) imprisonment, but rejected that as too high. Instead, it chose to sentence him at the low end of the guidelines range, which was a sentence that the court believed was "appropriate for his role." That came out to a sentence of 214 months imprisonment: the 168-month mandatory minimum plus 46 months for the Hobbs Act robbery counts. That was the lowest within-guidelines sentence available.

The court stated that the sentence was "appropriate when I consider his circumstances, it's appropriate for considering the circumstances of the offense, [and] the need to protect the public from this defendant's criminal activity." The court also pointed out that Thompson "obviously is not remorseful," noting that "he is not remorseful now nor is he — he didn't plead guilty."

The court also noted "[f]or the record," that it "was not particularly happy with going along with the recommendation to reduce the sentence to the other defendants but I think they are actually charged with other crimes as well that are

coming up that they are going to be paying the price for then.  So, their time in court is not over with either."

## II.  ANALYSIS

Thompson challenges his sentence on procedural and substantive grounds. We generally "review the reasonableness of a sentence . . . using a two-step process."  United States v. Cabezas-Montano, 949 F.3d 567, 605 (11th Cir. 2020). We look first at procedural reasonableness, considering "whether the district court committed any significant procedural error, such as . . . failing to explain adequately the chosen sentence."  Id.; see also United States v. Irey, 612 F.3d 1160, 1194 (11th Cir. 2010) (en banc) ("[T]he adequacy of a district court's findings and sentence explanation is a classic procedural issue, not a substantive one.").  We then look at substantive reasonableness, considering "whether the sentence is substantively unreasonable in light of the [18 U.S.C.] § 3553(a) factors and the totality of the circumstances."  Cabezas-Montano, 949 F.3d at 605.

### A.

The procedural error that Thompson asserts the district court committed is failing to adequately explain the reason for the sentence it imposed on him. Thompson focuses on what he argues was the court's failure to specifically explain the disparity between his sentence and the sentences of his codefendants.  The parties dispute whether we should review the procedural challenge under a de novo

or plain error standard.  See United States v. Parks, 823 F.3d 990, 995–96 (11th Cir. 2016); United States v. Bonilla, 463 F.3d 1176, 1181 (11th Cir. 2006).  But we need not decide that issue because under any standard our precedent makes clear that Thompson's challenge fails and that the court's explanation of the sentence was adequate.

A district court at the time of sentencing must state its reasons for imposing the sentence it does.  Rita v. United States, 551 U.S. 338, 356–57 (2007) (citing 18 U.S.C. § 3553(c)).  But the court need not provide detailed reasoning or make specific findings about the 18 U.S.C. § 3553(a) factors and we "have never required or expected district judges to compose a doctoral thesis to explain why they have imposed a particular sentence." Irey, 612 F.3d at 1195.  "[T]he district court is not required to incant specific language or articulate its consideration of each individual § 3553(a) factor, so long as the whole record reflects the district court's consideration of the § 3553(a) factors." Cabezas-Montano, 949 F.3d at 609. That is true "particularly where, . . . it is obvious the court considered many of the § 3553(a) factors." Bonilla, 463 F.3d at 1182.

The court's explanation must "satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita, 551 U.S. at 356.  And "[w]hen the district court fails to mention the § 3553(a) factors, we look to the record to see if the

8

district court did, in fact, consider the relevant factors." Cabezas-Montano, 949 F.3d at 609.

The record shows that the district court did not fail to mention the § 3553(a) factor or fail to satisfy us that it considered the parties' arguments and had a reasoned basis for its decision. As for the § 3553(a) factors, the court noted that its "job is to sentence the defendant to a sentence which is sufficient but not more than necessary to accomplish the sentencing goals set forth in the federal statutes." To do so, it mentioned many of the factors explicitly: Thompson's personal circumstances, the circumstances of the offense, and the need to protect the public. It also discussed Thompson's lack of remorse, which is relevant to several of the § 3553(a) factors. See United States v. McNair, 605 F.3d 1152, 1231 (11th Cir. 2010) (noting that lack of remorse is relevant "as to several factors, such as the characteristics of a defendant, the need to promote respect for the law, and the need to protect society"). From the record, "it is obvious the court considered many of the § 3553(a) factors." Bonilla, 463 F.3d at 1182.

Thompson's only argument at sentencing was that because he was just the getaway driver, he was less culpable than his codefendants and should get a lower sentence than them. The court expressly considered that argument and gave two transcript paragraphs of reasons for rejecting it. As the court explained, it had often heard that same argument from getaway drivers but believed that the driver

9

"is, nonetheless, responsible for the crime." It is the driver who sets the crime in motion, and without him the actual robbers would be more easily and quickly arrested, and that would result in some later robberies being prevented.

Thompson argues that we should find fault with the district court for not explaining the difference between his sentence and those of his codefendants. We have never required a district court to do that. But even if we did, the district court gave a sufficient explanation when it responded to Thompson's argument at the sentence hearing, which was based entirely on disparity, and discussed his role in the offense along with other factors. The court said enough.

B.

Thompson also argues that, even if the district court adequately explained his sentence, the reasons it gave were not convincing and the sentence was substantively unreasonable. It is Thompson's burden to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015).

"We review the reasonableness of the sentence only for an abuse of discretion, and in conducting our deferential review we consider the totality of the circumstances, including the extent of any variance from the Guidelines range." United States v. Isaac, 987 F.3d 980, 994 (11th Cir. 2021) (quotation marks

10

omitted).  Under the abuse of discretion standard, "we will sometimes 'affirm the district court even though we would have gone the other way had it been our call.'" Rosales-Bruno, 789 F.3d at 1254 (quoting Irey, 612 F.3d at 1189).  That means the relevant question is not what we might have done in the first instance, but whether the sentence is within the range of permissible outcomes.  Id.  The district court's chosen "sentence need not be the most appropriate one, it need only be a reasonable one."  United States v. Riley, 995 F.3d 1272, 1278 (11th Cir. 2021).  It follows that we will vacate a sentence as substantively unreasonable "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Irey, 612 F.3d at 1190.

A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment by balancing the proper factors unreasonably.  Id. at 1189.  The district court commits a clear error of judgment when it considers the proper factors but weighs them unreasonably. Id.  The factors the district court is to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to

11

promote respect for the law, and to provide just punishment for the offense as well as to afford specific and general deterrence; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense; (5) any pertinent policy statement in effect; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

In keeping with the deferential abuse of discretion standard, we have emphasized that a district court has discretion in weighing the § 3553(a) factors and that "we will not substitute our judgment in weighing the relevant factors." United States v. Langston, 590 F.3d 1226, 1237 (11th Cir. 2009) (quotation marks omitted).  Although a "district court's unjustified reliance on any one [§] 3553(a) factor may be a symptom of an unreasonable sentence," United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008), and "[a]lthough the district court must consider all the applicable § 3553(a) factors, it does not have to give all of them equal weight and it may in its sound discretion attach 'great weight to one factor over others.'"  Isaac, 987 F.3d at 995 (quoting Rosales-Bruno, 789 F.3d at 1254). As we have reiterated: "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and the court is permitted to attach great weight to one factor over others.  That is what discretion

12

in weighing factors is about." Riley, 995 F.3d at 1279 (quotation marks and citations omitted).

Thompson argues that the district court made a clear error of judgment by placing too much weight on Thompson's lack of remorse, asserting that it "focused too singularly on the fact that [he] went to trial." Thompson also argues that the court created an unreasonable disparity between his sentence and the sentences of his codefendants; his sentence should not have been longer than theirs, he says, because as the getaway driver his offense conduct was far less culpable.

As Thompson puts it, the district court abused its discretion by deciding that his "decision about how to plead and whether to go to trial dwarfed all other considerations." The district court did not, however, rest its conclusion that he lacked remorse solely on his decision to go to trial. Thompson did not merely deny his guilt by going to trial. Even after being found guilty, Thompson did not accept the verdict, did not acknowledge his guilt, and did not otherwise accept responsibility. Instead, in both a sentencing memorandum and through his attorney's argument at the sentence hearing, Thompson continued to assert that he was not guilty. He steadfastly refused to accept responsibility. No wonder the court found: "He obviously is not remorseful."

A pronounced lack of remorse, a steadfast refusal to accept responsibility, is an important sentencing consideration. It is relevant to several § 3553(a) factors,

13

such as the defendant's individual characteristics, the need to protect the public, and the need to promote respect for the law. See McNair, 605 F.3d at 1231. It also relates to specific deterrence and the likelihood that the defendant will commit more crimes. Cf. Riley, 995 F.3d at 1280–81 (noting the district court's emphasis on criminal history is consistent with § 3553(a) because five of the factors are related to criminal history).

Thompson argues that the court should have given more weight to his role in the offense. The court did consider his role as the getaway driver and explained why that was a key role and did not weigh much, if at all, in his favor. District courts have considerable discretion in the weight they put on a particular § 3553(a) factor, both standing alone and compared to other factors. See, e.g., Riley, 995 F.3d at 1279. "We do not reweigh relevant factors nor do we remand for re-sentencing unless the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence outside the range of reasonable sentences." Langston, 590 F.3d at 1237. We see no clear error of judgment in how the court weighed the various factors, nor do we think Thompson's "sentence [is] outside the reasonable range of sentences." Id.

Thompson also argues that by giving him a longer sentence than his codefendants, the court created an unwarranted sentence disparity. That, he says, runs afoul of a § 3553(a) factor requiring courts to consider "the need to avoid

14

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

As the text of the statute indicates, the relevant sentencing disparity for § 3553(a)(6) is the disparity between similarly situated defendants. See, e.g., United States v. Abovyan, 988 F.3d 1288, 1311 (11th Cir. 2021). "[T]here can be no 'unwarranted' sentencing disparities among codefendants who are not similarly situated." United States v. Azmat, 805 F.3d 1018, 1048 (11th Cir. 2015). And defendants "who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." Abovyan, 988 F.3d at 1311 (quoting United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009)). Thompson is not situated similarly with his two co-defendants who pleaded guilty and cooperated. Not nearly.

We have said that "there is no unwarranted disparity when a cooperating defendant pleads guilty and receives a lesser sentence than a defendant who proceeds to trial." Azmat, 805 F.3d at 1048 (quoting Langston, 590 F.3d at 1237). And said that "[t]here is no unwarranted disparity even when the sentence the cooperating defendant receives is substantially shorter." Abovyan, 988 F.3d at 1311 (quotation marks omitted) (emphasis added). And also said that "any disparity between the sentences of [the noncooperating defendant] and [the

15

cooperating defendant] is not an 'unwarranted' sentence disparity within the meaning of § 3553(a)(6), much less one that required the district court to impose a lower sentence regardless of the other § 3553(a) factors." Id.; see also Langston, 590 F.3d at 1237 ("Therefore, any sentencing disparity was not unwarranted.").

Thompson, unlike his codefendants, did not plead guilty or cooperate with the government, meaning he was not similarly situated to them. Because they were not similarly situated, his codefendants receiving certain sentence reductions for cooperation and ultimately receiving lower sentences than Thompson did not create an unwarranted sentencing disparity for purposes of § 3553(a)(6). Our decisions make that clear.

Thompson pretty much concedes those principles but tries a workaround. He acknowledges that, in his words, "cooperation is a warranted basis for different sentences," but he argues that "the extent of the difference must be warranted too," and he says that the extent of the difference in sentences is unwarranted here. But our decisions unambiguously teach that there is no unwarranted sentencing disparity if the defendants are not similarly situated in regards to admitting guilt and cooperating, and even substantial differences in sentences are permitted in that circumstance.

Thompson's failure to accept responsibility was just one of the factors that led to his sentence. See Abovyan, 988 F.3d at 1311. The district court did decide

16

this factor was important and did assign it substantial weight, but sentencing courts have a lot of discretion when it comes to making those types of decisions. See Cabezas-Montano, 949 F.3d at 612 ("The district court was well within its substantial discretion to weigh more heavily [those] other considerations."). In light of the totality of the circumstances, we are not left with a definite and firm conviction that the court committed a clear error of judgment.

We close with these observations. Thompson received a sentence at the very bottom of his guidelines range — only 46 months of his sentence was not part of a mandatory minimum. We ordinarily expect a sentence within the guidelines range to be a reasonable one, e.g., Isaac, 987 F.3d at 994, and a "sentence fall[ing] near the bottom of the . . . advisory guidelines range [is] a strong indication of reasonableness," Cabezas-Montano, 949 F.3d at 611. "Another indication of a reasonable sentence is that it is below the statutory maximum penalty of life imprisonment." United States v. Castaneda, 997 F.3d 1318, 1332 (11th Cir. 2021). Thompson's sentence was well below the statutory maximum of life imprisonment. It was not unreasonable.

**AFFIRMED.**

17