[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14013

_____

D.C. Docket No. 7:19-cr-00098-LSC-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN FRANKAS RILEY,
a.k.a. Chi,
a.k.a. C,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 28, 2021)

Before GRANT, TJOFLAT, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Kevin Riley pleaded guilty to being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).  Based on a string of violent crimes that Riley

began committing when he was 16 years old, the district court varied upward from his 12–18 month guidelines range and imposed a 70-month sentence, which is 50 months below his ten-year statutory maximum.  Riley contends that the amount of the upward variance is substantively unreasonable because the court gave his criminal history too much weight.

I.

As part of his written plea agreement, Riley stipulated to these facts.  In November 2018, Alabama law enforcement agents entered Riley's home in Northport, Alabama, to arrest him on an outstanding state warrant.[1]  They found him in the bedroom, and during the arrest an officer noticed a partially open drawer in a nightstand.  In the drawer, the officer saw in plain view a bag of assorted pills, a handgun, and a bag of a substance that appeared to be methamphetamine.  After obtaining a warrant, the officers seized the pills, the "suspected methamphetamine," the firearm, ammunition, a holster, "suspected" marijuana, and some "suspected" paraphernalia.[2]  The firearm was identified as an EAA .357 caliber revolver with a visible serial number.

---

[1] Riley's presentence investigation report states that the arrest warrant was for a charge of selling methamphetamine, but no toxicology report was available as proof of the chemical composition of the substance that was sold.  The Alabama drug offense charges were still pending when Riley was sentenced in this case.

[2] The parties agreed to insert the words "suspected" in the written plea agreement because no toxicology report was available for the substances recovered during the search.  At Riley's

2

When he possessed that firearm, Riley had already been convicted of a felony: a drive-by shooting committed when he was 16 years old. As a result, the discovery of the firearm in his nightstand during his arrest on state drug dealing charges when he was 35 led to a federal conviction for being a felon in possession in violation of 18 U.S.C. § 922(g). Those were bookend convictions at the time. In the nearly two decades between those felony convictions, he had racked up a stack of other convictions.

Riley's presentence investigation report catalogued his criminal history. The drive-by shooting conviction, which was his first one, resulted in a 5-year prison sentence for Riley. That sentence was suspended, no doubt because of his age, when Riley successfully completed a "Regimented Inmate Discipline Program." Three years later, when he was 19 years old, Riley was convicted of resisting arrest and simple assault. He was fined for that offense.

Unfortunately, Riley's criminal behavior wasn't just a teenage phase. It continued with regularity into his twenties, and after a brief hiatus, beyond. When he was 21, Riley was charged with aggravated assault and murder, but after those charges were bound over to a grand jury, they were "no billed." When Riley was 24, he was convicted of simple assault causing bodily injury. For that he was

_____

sentence hearing, the toxicology reports were still not available, but the government opted to proceed with sentencing anyway.

fined, and he paid restitution to the victims he had injured. Just a year later, when Riley was 25, he was convicted of "[r]esisting or obstruct[ing] arrest/fleeing," and possession of drug paraphernalia, and driving under the influence, and reckless driving. He was fined for those offenses. To close out the decade, when Riley was 29 he was convicted of simple assault causing bodily injury. He was fined yet again, was ordered to stay away from the victim and the scene of the crime, and required to pay more than $2,000 "for medical bills."

After a span of five years without a conviction, Riley returned to his ways in his 30s. When he was 34, Riley was convicted of "Simple Assault — Weapon or Meant to Produce Death." For that he was fined and "[o]rdered to the public work program." The next year, at age 35, Riley was charged with 11 separate state offenses, including three stemming from the alleged Alabama drug dealing offense that led to the arrest warrant officers were executing when they discovered the firearm that led to his § 922(g) conviction in this case.

Another two of Riley's pending charges were for possession of a stolen firearm and possession of a firearm by a felon, both in Mississippi. Riley entered an intent to plead guilty to those Mississippi charges but then failed to appear to enter a formal plea because he was in custody in Alabama. The final six pending charges were for attempted murder and reckless endangerment in Alabama.

4

The PSR in this case includes details about Riley's life with his family. He married his wife in 2009 and has three sons, including a 17-year-old from a previous relationship. Riley's wife described him as "always the underdog in the family" and noted that "most of his trouble comes from him stepping up for other people." She said he has "a big heart" and is "a great father." She mentioned that he was a volunteer coach for his son's baseball and basketball teams and has a lot of patience with children. She believed that Riley's own lack of a father figure "caused issues" for him, even though he was raised in a loving and caring home.

The PSR describes Riley's substance abuse problems. It notes that he used methamphetamine and that a drug screen indicated he "has relatively severe drug-related problems." It also noted Riley's "interest in drug treatment as he has never participated in a drug program" and that Riley "explained that his wife was trying to get him into treatment before his arrest."

The PSR calculates a base offense level of 14 for Riley's felon in possession offense. It adds four levels because he possessed the firearm in connection with another felony offense (possession of methamphetamine). After subtracting three levels for acceptance of responsibility, Riley's total offense level was 15. His prior convictions resulted in a criminal history category of II, which combined with his total offense level gave him a guidelines range of 21–27 months. His statutory maximum sentence is ten years.

5

Riley objected to the PSR's "assertion that the substances at issue are what the [PSR] states they are," and based on that he objected to the 4-level increase for possessing a firearm in connection with another felony offense. He also objected to the PSR's "characterization of the details" of his prior convictions and pending charges, noting he did "not agree with or stipulate to" them.

At the sentence hearing, the government did not have a chemical analysis report from the state lab to prove the illegality of the substance from Riley's alleged drug sale, which was the basis for the state arrest warrant that led to officers discovering the firearm that resulted in Riley's conviction in this case. Nor did the government have a chemical analysis report on the suspected methamphetamine from Riley's nightstand drawer, where officers also found the firearm that resulted in his felon in possession conviction. Still, the government declined the court's offer of a continuance and opted to proceed with sentencing.

The government conceded that the 4-level enhancement for possessing a firearm in connection with another offense could not apply because of the absence of evidence that the substance Riley possessed actually was methamphetamine. As a result, Riley's objection to that enhancement was sustained, and according to the court's calculations, his offense level was 12, his criminal history category was II, and his resulting guidelines range was 12 to 18 months. There were no objections to that calculation.

The court then asked about Riley's pending Mississippi charges for possession of a stolen firearm and possession of a firearm by a felon. Riley's counsel noted that Riley had "signed a petition to plead guilty" but "had not yet appeared in court to consummate that plea" because "he was in custody" for this case. Riley stipulated that he did possess a stolen firearm in Mississippi "around the dates" stated in the PSR.

Riley's counsel asked for a guidelines sentence. He noted that Riley planned to contest his pending state charges and that those would be resolved on another day in another forum,[3] though he acknowledged that the court had discretion to "interplay" those charges with the sentence in this case. He argued that "the majority" of Riley's prior convictions were from "when he was a younger man." He asked the court to consider that Riley was gainfully employed and that he "has an excellent support system." And he emphasized that letters submitted by Riley's wife, his brother, and others "indicate there is a lot more to Mr. Riley than what he has been charged with and what he has been convicted of and accepted responsibility for in this court."

---

[3] When asked at oral argument, Riley's appellate counsel stated that there had been convictions "related to" some of those pending state charges, but counsel did not know any details about the convictions. She did know that Riley was still in state custody.

7

The government joined Riley's request for a guidelines sentence because in the plea agreement it had "committed" to do so, and it noted that a guidelines sentence would not "be unduly harsh to [him] in any manner, especially in light of his criminal history." It pointed out that Riley's "criminal history starts early and starts with a drive-by shooting. It continues with resisting arrest, multiple assault charges." The government added that "curtailing [Riley]'s access to firearms and those he might harm with them should be paramount" in the court's determination of the sentence. And it asked the court not to run Riley's federal sentence concurrently with any eventual sentence on his pending state charges because those state charges "are wholly unrelated," "should have their own sentence," and should "not be combined" with his federal sentence.

The court started its sentencing comments by noting that it was "greatly concerned with [Riley]'s conduct." It recognized that "his convictions occurred at a younger age" but said "that would be true for anybody because [defendants] are always at a younger age if [they] are standing here and already had a conviction." The court then recounted Riley's criminal history, which it had earlier described as "horrendous," in detail:

> [L]ong before this particular hearing . . . he committed a drive by shooting at age 16, in 1999, in Mississippi. I am just going to run down the list. He had a resisting arrest in 2002 [when he was 19]. He had an assault in 2002. Another assault . . . at age 24 causing bodily injury on that one. In 2008 when he was 25, he had resisting arrest, possession of drug paraphernalia, and driving under the influence in Mississippi.

In 2012 at age 29 he had another assault causing bodily injury. In 2017, he had an assault with a weapon . . . .

[H]e has an aggravated assault and murder charge that I understand was no-billed, so I am not considering that. . . . [H]e had possession of a stolen firearm that you just talked about and he admitted, stipulating that, in fact, he did possess a stolen firearm. That, again, is in Mississippi. In 2018, June of 2018, he was charged with attempted murder. And he has not objected to the evidence that he was charged with this. Again, there is no conviction or anything, no further entries, just that he was charged with that attempted murder on or about June 22nd of 2018. And then he has the drug charge dealing with this.

The district court followed its lengthy recitation with these pointed

comments:

The long and short of it is, Mr. Riley, you are a very violent individual that has absolutely no with [sic] respect for the law. You have continued to commit violent offenses for a very long time. It is not appropriate for you to receive a guideline sentence.

The court imposed a sentence of 70 months, which was 52 months above the top of

the guidelines range, explaining it found that upward variance to be "appropriate"

after considering Riley's "nature and circumstances" and his "history and

characteristics." The court specified the sentence would "run consecutive" to any

sentences Riley was serving or would serve and concluded: "I probably should

give you a higher sentence than that but I am not."

The court rejected Riley's request for the sentence to begin running that day,

while he was already in state custody, because the basis for the sentence was

"totally different conduct." The court emphasized that it did not consider Riley's

pending charges for the alleged Alabama drug sale to be connected to this felon in possession conviction. The court commented that if it had considered those state charges to be connected to the crime in this case, it would have imposed a sentence of 120 months to run concurrently "because it would have been relevant conduct." The court did, however, agree to modify Riley's sentence to run concurrent with any sentence he received on the Mississippi state firearm charges.

Riley, through his attorney, objected to the upward variance, explaining that he thought "the extent of it is not reasonable." He "specifically point[ed] to the consideration of some of the details of prior offenses" that he had filed "a blanket objection to," especially the 2017 conviction. In response to that objection, the court noted that the 2017 charge itself specified it was an assault "with weapon" and that Riley had admitted to the charge and the conviction, even if he didn't admit to the details of it. The court continued:

> I am making it very clear for the record now, even if that was not there and it was just a[n] assault and I had no idea how it occurred, it would make no difference in the sentence I gave him. It wouldn't change the sentence. I would have given him the same sentence based upon his other conduct. . . .
>
> The fact of the conviction does make a difference but the . . . details of it, do[] not. I would have given the same sentence.

Riley repeated his objection to the reasonableness of "the approximately 300 percent upward variance."

## II.

The familiar abuse of discretion standard applies to our review of a district court's sentencing decision, and it "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." United States v. Irey, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc) (quotation marks omitted). We have repeatedly recognized that "under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call." Id. at 1189 (quotation marks omitted).

We will vacate a sentence as substantively unreasonable "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1190 (quotation marks omitted). "A district court's sentence need not be the most appropriate one, it need only be a reasonable one. We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." Id. at 1191. As the party challenging a sentence, Riley "has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015). That an upward variance sentence is "well

11

below the statutory maximum" indicates that it is reasonable.  United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014).  And the sentence Riley received was 50 months below the statutory maximum of 120 months.

Riley contends that the district court abused its discretion by imposing too much of an upward variance, although he doesn't say how much of one would have been reasonable.  He argues that the court focused almost exclusively on his criminal history and didn't consider what he asserts is the "fairly ordinary" nature of his offense and his positive personal characteristics, including strong family support and his involvement in his children's lives.  So much weight on his criminal history, he asserts, equals a substantively unreasonable sentence.  Not necessarily, and not here.

Section 3553(a) directs sentencing courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  It emphasizes the need for sentences "to reflect the seriousness of the offense, to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  Id. § 3553(a)(2).  "A sentencing court is not required to incant the specific language used in the guidelines or articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those

factors." United States v. Ghertler, 605 F.3d 1256, 1262 (11th Cir. 2010) (quotation marks omitted). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court," United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (quotation marks omitted), and the court "is permitted to attach 'great weight' to one factor over others," United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 57 (2007)). That is what discretion in weighing factors is about.

And discretion in weighing sentencing factors is particularly pronounced when it comes to weighing criminal history. Courts "have broad leeway in deciding how much weight to give to prior crimes the defendant has committed," Rosales-Bruno, 789 F.3d at 1261, and "[p]lacing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to consider are related to criminal history," id. at 1263 (citing the factors listed above). "Under substantive reasonableness review, we have repeatedly affirmed sentences that included major upward variances from the guidelines for defendants with significant criminal histories that the sentencing courts weighed heavily." Id. (affirming an upward variance to 87 months from a guidelines range of 21–27 months); see also, e.g., United States v. Overstreet, 713 F.3d 627, 634, 636–40 (11th Cir. 2013) (affirming an upward variance to 420 months from a guidelines range of 180–210 months); United States v. Early, 686

F.3d 1219, 1221–22 (11th Cir. 2012) (affirming an upward variance to 210 months from a guidelines range of 78–97 months); Shaw, 560 F.3d at 1237–41 (affirming an upward variance to the statutory maximum of 120 months from a guidelines range of 30–37 months).  We have also affirmed upward variances where courts gave weight to a defendant's recent surge of criminal activity.  See United States v. Johnson, 803 F.3d 610, 618–20 (11th Cir. 2015) (affirming an upward variance to 102 months from a guidelines range of 70–87 months and noting the court "reasonably found" the guidelines range "understated the seriousness" of the defendant's "recent criminal history").

Some characteristics of criminal history are especially significant:  how bad a repeat offender a defendant is matters greatly for purposes of sentencing. We have affirmed a sentence in which "recidivism was the single most important factor in the court's decision to vary upward," Shaw, 560 F.3d at 1239–40, and we have recognized the "Supreme Court has consistently affirmed the imposition of longer sentences, even for non-violent offenses, based on an offender's recidivism," United States v. Lyons, 403 F.3d 1248, 1256–57 (11th Cir. 2005); see also Ewing v. California, 538 U.S. 11, 18–20, 30–31 (2003) (affirming a 25-year to life sentence given to recidivist who stole 3 golf clubs priced at $399 each); Hutto v. Davis, 454 U.S. 370, 371, 372 n.1, 374–75 (1982) (concluding that two consecutive sentences of 20 years each given to recidivist for possessing 9 ounces

14

of marijuana with the intent to distribute it and for distribution of marijuana do not violate the Eighth Amendment); Rummel v. Estelle, 445 U.S. 263, 265–67 (1980) (affirming life sentence with the possibility of parole imposed upon recidivist who "obtain[ed] $120.75 by false pretenses").

Violent offenders are often good candidates for upward variances. Recent research from the United States Sentencing Commission shows that "offenders who engaged in violent criminal activity—whether during [their] instant federal offense or as part of prior criminal conduct—generally recidivated at a higher rate, more quickly, and for more serious crimes than non-violent offenders." U.S. Sent'g Comm'n, Recidivism Among Federal Violent Offenders 3 (2019). Add firearms to the calculus, and the risk goes from addition to multiplication. "Firearms offenders generally recidivated at a higher rate, recidivated more quickly following release into the community, and continued to recidivate later in life than non-firearms offenders." See U.S. Sent'g Comm'n, Recidivism Among Federal Firearms Offenders 4 (2019). When considering the prior convictions of a defendant who has repeatedly engaged in violence and crimes involving firearms, it is eminently reasonable for a district court to weigh that criminal history heavily in the sentencing decision. See 18 U.S.C. § 3553(a); Johnson, 803 F.3d at 613–14, 619 (noting the defendant's string of violent armed robberies and "long criminal

history involving firearms"); Rosales-Bruno, 789 F.3d at 1263 (listing decisions affirming major upward variances based on criminal history).

III.

Even if we accept Riley's contention that the district court focused almost exclusively on his criminal history when crafting his sentence, we cannot conclude the court gave that history an unreasonable amount of weight. As we have explained, the court had "broad leeway" to calculate that weight. Rosales-Bruno, 789 F.3d at 1261. And when a court chooses to give "substantial weight" to a defendant's criminal record, that choice is "entirely consistent with § 3553(a)" because five of that section's factors are related to criminal history. Id. at 1263.

A defendant's criminal history tells a sentencing court, among other things, whether he is a repeat offender, a violent one, or one likely to use firearms. If he is a recidivist, the court may correctly conclude that previous punishment for criminal conduct failed to deter him and that a harsher sentence is warranted. If his crimes have involved violence or firearms, a court may correctly conclude that a stronger sentence is necessary to protect the public from his future crimes, which research has shown are likely to occur more often, more quickly, and with more damage done. See U.S. Sent'g Comm'n, Recidivism Among Federal Violent

16

Offenders 3 (2019); U.S. Sent'g Comm'n, Recidivism Among Federal Firearms Offenders 4 (2019).

A court that weighs heavily a defendant's criminal history has acted within its discretion, even when it does not recite specific guidelines language or tick off every § 3553(a) factor.  See Ghertler, 605 F.3d at 1262.  And here the district court did highlight some of its § 3553(a) considerations, referring to Riley's "nature and circumstances," his "history and characteristics," and his lack of "respect for the law."  And, as we have mentioned, an additional sign of the upward variance's reasonableness is the fact that Riley's 70-month sentence is more than 4 years below his 10-year statutory maximum.  See Stanley, 739 F.3d at 656.

When Riley was sentenced as a felon in possession of a firearm, he had already been convicted of at least five separate violent crimes.  In fact, since he was old enough to drive, he has never gone more than five years without being convicted of one.  Violent crime may not be his vocation, but it is at least his avocation.  And here it came coupled with a current conviction for a firearm offense and an admission that he had committed another firearm offense less than a year earlier. See Johnson, 803 F.3d at 618–20 (giving weight to a defendant's significant recent criminal history).  That's enough to support the court's conclusion that Riley is "a very violent" person who has "absolutely no . . . respect for the law."  The 70-month sentence the court gave him is not unreasonable.

17

**AFFIRMED.**