[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13494
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cr-00260-CEM-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDGAR JOHAN DIAZ-COLON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 13, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Edgar Johan Diaz-Colon was sentenced to 1,800 months' imprisonment—the

statutory maximum sentence—for his conviction of five counts of sexual

exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e).  He challenges this sentence, arguing that the district court abused its discretion by imposing a substantively unreasonable sentence.  Because the sentence is not substantively unreasonable, we affirm the sentence.

## I.     FACTUAL AND PROCEDURAL HISTORY

In December 2019, a grand jury indicted Diaz-Colon on five counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e).  He pled guilty to all five counts without a plea agreement.  The investigation that led to these convictions began after Q.W., a friend of Diaz-Colon and with whom he had briefly lived, alerted the Pasco County Sherriff's Office ("PCSO") that she had discovered child pornography on his electronic devices.  One video showed Diaz-Colon sexually assaulting Q.W.'s three-year-old niece ("CV-1").  Q.W. provided PCSO with Diaz-Colon's electronic devices.  After PCSO obtained search warrants for these devices, they discovered roughly 2,500 videos of child pornography, which included multiple videos of CV-1 and two other known child victims ("CV-2" and CV-3").  Q.W. then notified J.O., another friend of Diaz-Colon who had allowed him to briefly live in the garage of his home and the father of CV-2 and CV-3, that his daughters may have been victimized by Diaz-Colon.  CV-2 and CV-3 were seven and six years old, respectively, when Diaz-Colon sexually assaulted them.

2

PCSO then interviewed each of the child victims.  CV-1, although only three-years-old with limited ability to communicate the atrocities, told officials that Diaz-Colon had repeatedly touched and kissed her buttocks, had kissed her vaginal area, and had hit her multiple times.  CV-2 and CV-3 stated that on multiple occasions, Diaz-Colon took them to the garage, forced them to take their clothes off, and then sexually assaulted CV-3 by digitally penetrating her vagina.  They also stated that Diaz-Colon inserted his penis into their vaginas and anuses and forced the children to perform oral sex on him.  Diaz-Colon threatened to kill CV-2 if she told anyone about the abuse and warned CV-3 not to tell her parents.  CV-2 stated that Diaz-Colon spanked her with a belt, which made her cry.  CV-2 recalled that Diaz-Colon taped her mouth shut when she called for help.  CV-2 also explained that Diaz-Colon had a rule that she could not ask for help and spanked her when she broke that rule.

There are five videos, filmed by Diaz-Colon in 2018 and 2019, that provided the basis of the five counts against him.  Count One pertained to a video showing Diaz-Colon forcing CV-2 and CV-3 to perform oral sex on him.  A second video showed Diaz-Colon forcing CV-2 to pull up her skort and panties to expose her vagina, providing the basis for Count Two.  Count Three pertained to a video showing CV-2 naked from the waist down, exposing her vagina and anus.  Count Four pertained to a video showing Diaz-Colon manipulating CV-3's naked vagina.  And a fifth video showed Diaz-Colon pulling CV-1's underwear aside and spreading

3

the child's vagina, which provided the basis for Count Five.  Counts One through Three took place on July 8, 2018, Count Four took place on July 20, 2019, and Count Five took place on July 27, 2019.

Before Diaz-Colon's sentencing hearing, a probation officer submitted the Presentence Investigation Report ("PSI"), which outlined the above conduct underlying his convictions.  In the PSI, it was noted that Counts One through Five would not be grouped because they represented different victims and harms and calculated the offense level for each count, including an additional pseudo count for Count One because that count involved two separate victims.  The PSI initially calculated a base offense level of 32 for each count based on the conviction under 18 U.S.C. § 2251(a) and U.S.S.G. § 2G2.1(a).  For Count One, the probation officer applied a four-level increase pursuant to U.S.S.G. § 2G2.1(b)(1)(A) because the offense involved a minor who was not twelve years old.  The probation officer then applied a two-level increase pursuant to U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact.  The total offense level for Count One was therefore 38.  Pseudo Count One followed the same calculations, also yielding a total offense level of 38.

For Count Two, the probation officer added four levels to the base offense level pursuant to U.S.S.G. § 2G2.1(b)(1)(A) because the offense involved a minor who had not yet attained the age of twelve years, yielding a total offense level of 36.

4

For Count Three, the probation officer performed the same calculation as Count Two, also yielding an offense level of 36. For Counts Four and Five, the probation officer followed the same calculations used in Count One. But for Count Five, the probation officer also added four levels pursuant to U.S.S.G. § 2G2.2(b)(4)(B) because the offense involved a toddler. As such, the total offense level for Count Four was 38, and the total offense level for Count Five was 42.

Next, the probation officer performed the multiple count adjustment pursuant to U.S.S.G. § 3D1.4 and, based on the number of units, increased the offense level by 4 levels, yielding a subtotal of 46. And pursuant to U.S.S.G. § 4B1.5(b)(1), the probation officer characterized Diaz-Colon as a repeat and dangerous sex offender against minors, which resulted in a new total offense level of 51. The probation officer then applied a three-level total reduction pursuant to U.S.S.G. § 3E1.1(a)–(b) for acceptance of responsibility. Although the total offense level was in excess of 43, the offense level was treated as 43 pursuant to U.S.S.G. Chapter 5, Part A, comment n.2.

The PSI assigned Diaz-Colon a criminal history of category III. The statutory range for each count was fifteen to thirty years' imprisonment. Based on a total offense level of 43 and a criminal history category of III, the guideline imprisonment range was life. But because the statutory maximum sentences were less than the

maximum of the applicable guideline range, the PSI determined that the guideline range was 1,800 months' imprisonment.

The PSI discussed in detail Diaz-Colon's personal history and circumstances. After the age of three months, Diaz-Colon lived with his grandparents. Diaz-Colon rarely saw his father and often felt abandoned by his mother. When Diaz-Colon was five, his grandfather, who had been a father figure to him, committed suicide. At age seven, Diaz-Colon was sexually assaulted by his older brother. At age fourteen, Diaz-Colon was statutorily raped by a twenty-eight-year-old woman. At fifteen, Diaz-Colon began participating in a "cam" website where he performed sexual acts over camera with older women.

The PSI also discussed Diaz-Colon's mental health and substance abuse problems. He was diagnosed with attention deficit hyperactivity disorder ("ADHD") at the age of six. In his teens, he attempted to commit suicide by overdosing on pills. After a psychological examination in 2020, Diaz-Colon was diagnosed with major depressive disorder, polysubstance dependence, posttraumatic stress disorder ("PTSD"), and acute stress disorder. The PSI also noted that Diaz-Colon had abused marijuana, Percocet, oxycodone, cocaine, and molly.

Diaz-Colon did not object to the factual recitation except for aspects of the interview with CV-2 and CV-3 in paragraph seventeen. He did object to the application of U.S.S.G. § 4B1.5(b)(1) because he maintained that the conduct did

6

not constitute a pattern.  And he objected to paragraph 162 where the probation officer found there were no factors that would warrant a departure, arguing that U.S.S.G. § 5K2.22 provided grounds for departure because of his abandonment and exposure to sexual abuse and trauma.

Diaz-Colon also provided a "mitigation appendix," which in addition to the psychological evaluation, contained letters, photographs, academic transcripts, Civil Air Patrol records, and employment verification.  Diaz-Colon's grandmother wrote a letter describing the impact her husband's death had on Diaz-Colon, writing that Diaz-Colon's mother never visited him and that he suffered from depression and was hospitalized following a suicide attempt.  She continued that he liked to help others, did well in school, and ultimately asked the court for mercy for Diaz-Colon.  The appendix also included a letter from his mother, who confirmed that she was not part of his life and stated that she hoped "for him to get out some day."  Then there was a character reference from a longtime friend of Diaz-Colon's.  And the remainder of the appendix was devoted to photos of Diaz-Colon throughout the years and his academic records, Civil Air Patrol records, and employment records.

The government argued in its sentencing memorandum that the nature of Diaz-Colon's offenses "truly shock[s] the conscience."  It pointed out that he gained and exploited trust repeatedly to sexually, physically, and emotionally abuse young children.  The government described his sexual interest in children as "palpable"

7

because Diaz-Colon kept hundreds of child sex abuse videos on his devices and noted that he was not willing to live vicariously through others but "had to victimize children himself." Finally, the government argued that the guidelines sentence of 150 years—1,800 months—met the sentencing goals because Diaz-Colon was a demonstrated danger to the public and a lengthy sentence would help deter others.

At the sentencing hearing, Diaz-Colon reiterated his objections to the PSI, including his argument for a departure under U.S.S.G. § 5K2.22 because he was sexually abused as a child, moved in with his grandparents because his mother had no interest in caring for him, lost his grandfather to suicide at age five, and struggled with ADHD. The district court overruled each of Diaz-Colon's objections and adopted the PSI's factual statements and guidelines calculations, noting that it reviewed all of the things filed by Diaz-Colon in his mitigation appendix. The district court then heard the parties' arguments about the proper sentence. Diaz-Colon requested that the district court sentence him to concurrent fifteen-year terms of imprisonment, a sentence that would not be equivalent to life and would provide him the motivation to seek treatment. He then spoke in allocution, apologizing to the victims and asking for forgiveness. The government argued for the maximum 1,800-month total sentence, noting the extremely serious nature of the offenses, the pattern of his conduct, and the extensive amount of child pornography videos that he possessed that were not the basis of the five counts.

Before delivering the sentence, the district court addressed the parties.  First, the district court credited the defense's effective argument and noted that it would sentence Diaz-Colon based on his individual circumstances but stated that a fifteen-year sentence would "fly in the face of a sentencing disparity argument" because in comparison to previous child-exploitation cases, Diaz-Colon's conduct was among the worst.  Next, the district court acknowledged that Diaz-Colon had "significant mitigation" based on his personal history and victimization but pointed out that it would be a false equivalency to call him the "fourth victim" here next to the three child victims.  The district court then noted that Diaz-Colon was dangerous based on the "level of cruelty exhibited by the defendant towards these kids" and that the court did not think that Diaz-Colon would ever not be a danger.  Finally, the district court recognized that the government's requested sentence would effectively be a life sentence and abandon any chance of him ever being rehabilitated, which it stated it did not take lightly.

In the end, the district court sentenced Diaz-Colon to a total term of 1,800 months, which consisted of consecutive 360 months as to each count, followed by a 5-year total term of supervised release.  It stated that it had considered the advisory sentencing guidelines and all the factors identified in 18 U.S.C. § 3553(a) and that the sentence was "sufficient but not greater than necessary to comply with the

statutory purposes of sentencing."   Diaz-Colon objected to the sentence on procedural and substantive grounds.  And this timely appeal ensued.

## II.    STANDARD OF REVIEW

We review the reasonableness of a district court's sentence for an abuse of discretion. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016).  This review is deferential, *see Gall v. United States*, 552 U.S. 38, 51 (2007), with the defendant bearing the burden to show that his sentence is unreasonable, *Trailer*, 827 F.3d at 936.  "In considering the substantive reasonableness of a sentence, we consider the totality of the circumstances and whether the sentence achieves the sentencing purposes stated in [18 U.S.C.] § 3553(a)."  *United States v. Melgen*, 967 F.3d 1250, 1266 (11th Cir. 2020).  We will vacate a defendant's sentence only if "we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'"  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

## III.    ANALYSIS

Diaz-Colon raises only one issue on appeal—that his 1,800-month sentence is substantively unreasonable.  Specifically, he argues that the district court failed to meaningfully consider his unique mitigating history and characteristics and that

10

sentencing him to the statutory maximum in light of those mitigating factors is greater than necessary.

The district court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes listed in 18 U.S.C. § 3553(a)(2). *United States v. Nagel*, 835 F.3d 1371, 1376 (11th Cir. 2016) (quoting § 3553(a)(2)). "'The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court,' and the court 'is permitted to attach "great weight" to one factor over others.'" *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (citation omitted) (first quoting *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007), then quoting *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009)). But a "sentence may be substantively unreasonable if a district court unjustifiably relied on any one § 3553(a) factor, failed to consider pertinent § 3553(a) factors, selected the sentence arbitrarily, or based the sentence on impermissible factors." *United States v. Sarras,* 575 F.3d 1191, 1219 (11th Cir. 2009); *see also Irey*, 612 F.3d at 1189.

Moreover, the district court does not need to specifically address every mitigating factor raised by the defendant for the sentence to be substantively reasonable. *See United States v. Snipes*, 611 F.3d 855, 873 (11th Cir. 2010). Nor does the court need to discuss each 18 U.S.C. § 3553(a) factor so long as the record reflects that the court considered those factors. *Riley*, 995 F.3d at 1279. "[A]

11

sentence which may result in a defendant passing away while in custody, however tragic, is neither automatically a life sentence nor presumptively unreasonable." *United States v. Mosquera*, 886 F.3d 1032, 1052 (11th Cir. 2018). Indeed, we expect that a sentence within the sentencing guidelines range will be reasonable. *See United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014).

Here, the district court did not abuse its discretion by imposing the statutory maximum sentence of 1,800 months. The district court properly considered the § 3553(a) factors, including the seriousness of the offense, the need to protect the public, and Diaz-Colon's mitigating circumstances and history. As to Diaz-Colon's mitigating factors, the district court heard extensive argument and evidence from Diaz-Colon detailing his troubled childhood and his experiences with sexual abuse, mental health problems, and drug abuse. And the district court heard extensive argument and evidence regarding Diaz-Colon's aggravating factors. The government described Diaz-Colon's significant appetite for child sex abuse videos and indicated that his conduct portrayed a dangerous pattern of abuse. It then outlined the extensive amount of graphic content created and possessed by him beyond the five videos underlying each count. Beyond video and photo evidence, the district court reviewed the interviews of the three child victims that outlined more of the abuse that they suffered at the hands of Diaz-Colon. The district court also heard testimony from J.O., the father of CV-2 and CV-3, about how Diaz-Colon

capitalized on his kindness and hospitality to gain access to and sexually assault his daughters and about the ramifications that Diaz-Colon's actions have had and will have on the lives of his daughters moving forward.

When imposing the sentence, the district court sufficiently indicated that it considered everything presented before it and the § 3553(a) factors and outlined the weight afforded the relevant factors.  It did not unjustifiably rely on only one factor; instead, it considered all the relevant factors and then weighed and balanced them to come to the sentence it imposed.  Although Diaz-Colon disagrees with the court's choice to put the most weight on the extreme nature of his offenses and the ongoing danger he presents, it was within the district court's sound discretion to give these factors great weight over Diaz-Colon's mitigating circumstances.  *See Riley*, 955 F.3d at 1279.  We therefore conclude that the district court did not abuse its discretion.

Moreover, although Diaz Colon's 1,800-month sentence was at the statutory maximum and will effectively be a life sentence, it was also the sentencing guidelines term given based on the offense level calculated.  And based on the record in this case, a sentence that effectively amounts to life imprisonment is "not greater than necessary" to account for Diaz-Colon's "horrific" offenses and other egregious conduct, to protect vulnerable young children from his dangerous and predatory behavior, to promote respect for the law, and to deter others from committing child

sex offenses. *See* § 3553(a)(1)–(2); *see also United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming as reasonable the imposition of a 140-year, statutory maximum sentence for producing and distributing child pornography). Considering the record in this case and the § 3553(a) factors, we cannot conclude that Diaz-Colon established that his sentence was substantively unreasonable. Accordingly, we affirm Diaz-Colon's sentence.

**AFFIRMED.**