[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12507

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICO LAPRINCE SOUTHALL,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00289-ELR-JEM-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Rico Southall appeals his above-guidelines sentence of 84 months' imprisonment imposed after he pleaded guilty to possession of a firearm by a convicted felon. He argues that the sentence is substantively unreasonable because the district court improperly weighed the relevant sentencing factors and failed to provide a sufficient justification for the upward variance. After review, we affirm.

## I.    Background

In 2021, police officers in Cobb County, Georgia responded to a report of an armed person, who was later determined to be Southall, shooting at vehicles. One of the victims, V.F., was married to Southall's cousin. According to Southall, he and V.F. had a prior conflict, he felt threatened by V.F. and her husband, and Southall had moved from Paulding County to Cobb County to get away from V.F. However, on April 1, 2021, Southall and V.F. were driving in the same area in Cobb County, and when Southall saw her, he began pursuing her vehicle and shooting at it. Southall struck V.F.'s car five times—one bullet hit her driver's side mirror, two bullets hit the back window, and two hit the passenger side. Additionally, Southall struck another vehicle of a bystander traveling on the same road—the bullet entered the trunk and passed through to the rear passenger seat. No one was physically injured.

While officers spoke with V.F., Southall drove by and officers initiated a traffic stop. Officers discovered two firearms: (1) a Glock Model 22 with an attached extended magazine and (2) a Taurus Raging Judge Model 513, which had been reported stolen. Southall's girlfriend and their son were also in his vehicle. Officers arrested Southall. Southall subsequently made unsolicited statements, including that he and his girlfriend had a restraining order against V.F., but he saw V.F. drive past his home, and "he lost control." He stated that "he did not do it to hurt V.F., but he wanted 'to let her know not to fuck with' him." He also admitted that he knew he was a convicted felon and that he should not have any firearms.[1]

Thereafter, a grand jury indicted Southall on one count of possession of a firearm by a convicted felon, and he entered an open non-negotiated plea of guilty to the charge.

Prior to sentencing, the United States Probation Office filed a presentence investigation report ("PSI"), in which it determined that Southall's base offense level was 20 because the offense involved a firearm with an extended magazine. It then added two points because one of the firearms involved was stolen and four points because Southall used a firearm in connection with the

[1] Southall had the following prior felony convictions in Georgia: (1) 2006—Violation of the Georgia Controlled Substances Act and possession of cocaine with intent to distribute on or near a housing project; (2) 2009—possession of a Schedule II controlled substance; and (3) 2014—purchase/possession of a controlled substance. He also had a number of misdemeanor convictions involving drugs, criminal trespass, statutory rape, assault, battery, and a DUI.

felony offense of aggravated assault.  After deducting three points for acceptance of responsibility, Southall's total offense level was 23, which when combined with his criminal history category of III, resulted in a guidelines range of 57 to 71 months' imprisonment.[2]

The government filed a sentencing memorandum, requesting that the district court vary upward and sentence Southall to 84 months' imprisonment based on Southall's "violent and reckless conduct" in the instant offense, which "placed innocent people and the general public in peril," and his history of both violent and drug offenses.  In terms of his criminal history, the government pointed to Southall's convictions for: possession of cocaine and reckless driving in 2009; statutory rape in 2009; simple assault and criminal trespass in 2009; reckless conduct and criminal trespass in 2014;[3] possession of a controlled substance in 2014; and battery and criminal trespass in 2016.  The government maintained that a sentence of 84 months' imprisonment would reflect the seriousness of the offense, promote respect for the law, and provide adequate deterrence and a just punishment.

---

[2] Southall objected to the calculation of his criminal history score, arguing that his criminal history category should only be II, which the district court overruled at sentencing.  Southall does not appeal that determination.

[3] The government pointed out that the 2014 misdemeanor convictions for reckless conduct and criminal trespass had been "reduced from felony aggravated assault and criminal damage to property charges arising from an incident where defendant struck an individual with a figurine and damaged that same person's property."

Southall also filed a sentencing memorandum in which he requested a within-guidelines sentence of 57 months' imprisonment. In terms of his personal history and characteristics, Southall emphasized that his childhood was "marked by trauma and neglect" as both of his parents abused drugs and alcohol. At the age of 7, the Department of Children and Family Services removed him and his four siblings from the home because of neglect and abuse. They were initially placed in an emergency shelter and then in separate foster homes, which caused him great distress. Eventually, a distant relative in Virginia took in all five of the children, but once there, they were subjected to physical abuse and "treated like second-class citizens." Later, around his middle school years, his father regained custody and the family moved in with their grandmother, but his grandmother was physically abusive as well. Then, when Southall was in high school, his mother was released from prison and rejoined the family. At that time, things went "downhill again" because his mother started using drugs frequently, and Southall learned that his father was involved in the drug business.

Meanwhile, Southall had ADHD, but never received proper treatment, which led to struggles in school, and he ultimately dropped out. Southall began dealing drugs as a teen, drinking, and gambling, and he ended up in various legal troubles. However, in recent years, he had made concerted efforts to "turn his life around, so that he could be a present and involved father to [his son]."

Turning to the underlying offense, Southall explained that there was ongoing conflict between himself, V.F., and her husband, which had led Southall to moving away from the family property in Paulding County and moving in with his girlfriend and their son in Cobb County. He and his girlfriend had applied for a restraining order to keep V.F. away from them. And, on the date of the shooting, when he saw V.F. driving not far from his home, "he believed she was there to harm him and his family." He explained that he suffers from PTSD as a result of his childhood trauma,[4] and it contributed greatly to his irrational reaction to seeing V.F. near his home.

He emphasized that given his personal history and characteristics and the fact that he immediately took responsibility for his conduct, a sentence at the bottom of the guidelines was sufficient to satisfy the 18 U.S.C. § 3553(a) sentencing factors. He also noted that the guidelines already accounted for the fact that one of the firearms was stolen and one of the firearms possessed an extended magazine, such that these aggravating factors did not

---

[4] In support of his PTSD diagnosis and its effect on his behavior, Southall submitted a psychological evaluation report from Dr. Amy Gambow. Dr. Gambow opined that Southall's PTSD "created difficulties with impulse control, trouble identifying and appreciating potential consequences, and poor judgment in response to his emotions throughout his life."

warrant going above the guidelines—particularly because he also faced state charges on these matters.[5]

At sentencing, the district court adopted the guidelines range of 57 to 71 months' imprisonment as set forth in the PSI. The government then requested an "upward variance" sentence of 84 months' imprisonment, reiterating its position that such a sentence was warranted based on the "egregious" facts of the case—that Southall had two firearms (one with an extended magazine and one that was stolen), and he fired numerous times on a public road, hitting two different vehicles—which demonstrated Southall's reckless disregard for the general public and human life. The government further emphasized Southall's criminal history, which included violent offenses and a demonstrated pattern of escalation. Finally, the government argued that an 84-month sentence would promote respect for the law, provide adequate deterrence, reflect the seriousness of the offense, and provide just punishment.

Southall's counsel, in turn, argued for a bottom of the guidelines sentence of 57 months' imprisonment. She argued that although there were aggravating factors in the case in terms of the firearm with the extended magazine and the stolen firearm, those factors were already accounted for in the guidelines calculation. Furthermore, Southall faced state charges related to the same offense and would therefore be held accountable in state court. In other words, his counsel argued that the district court did not need

---

[5] In addition to his sentencing memorandum, Southall submitted several supportive letters from his family and a family friend.

to address the aggravating conduct and should focus solely on the possession of a firearm offense before the court.  Counsel also noted that Southall promptly accepted responsibility and pleaded guilty following his indictment.

Next, counsel addressed Southall's criminal history, emphasizing that he had "predominately misdemeanor offenses," and, in the preceding five-year period, had not had any new offenses.  She disputed the government's characterization of Southall's record as demonstrating an escalating pattern of violence.  Finally, she emphasized the mitigating circumstances in his case—namely, Southall's childhood trauma and PTSD—and urged the court to give significant weight to the mitigating factors when fashioning a sentence.

Southall then made a brief statement in which he apologized to the court and his family.  He stated that he knew he had "messed up" and had "to face the consequences."

The district court then explained that, even though Southall faced separate charges in state court, that fact would not factor into the court's sentencing decision because the district court did not know whether the state would continue prosecuting Southall or dismiss the state case once he was sentenced in this parallel federal proceeding.  In terms of Southall's acceptance of responsibility, the district court stated that it was not surprised that Southall accepted responsibility so soon after the offense because "the conduct was so egregious and his admissions [of guilt] were [so] immediate that . . . he didn't have much in terms of defense anyway."  Turning

to the government's request for a variance, the district court noted that it "normally" does not agree to variances and instead imposes a guidelines sentence, but this case was an exception because it "showed a total disregard for human life." The court emphasized that Southall "fire[d] a gun at least six times" at a person who was unarmed and not firing at him, and he could have easily killed V.F. or other innocent people. Accordingly, the court concluded that, even if it did not consider the aggravating factors accounted for by the guidelines—that one firearm had an extended magazine and the other was stolen—"this [was] a case where a variance above the guideline range is still warranted." Consequently, the court imposed a sentence of 84 months' imprisonment to be followed by 3 years' supervised release. The court explained that it considered the § 3553(a) factors and that the sentence was appropriate based on "the egregiousness of this crime" and Southall's criminal history, which demonstrated an escalation in violence. Southall objected to the procedural and substantive reasonableness of the sentence.[6] This appeal followed.

## II.    Discussion

Southall argues that his sentence is substantively unreasonable because the district court failed to weigh the

---

[6] Southall concedes that he is not challenging the procedural reasonableness of his sentence on appeal.

§ 3553(a) factors properly and failed to provide sufficient justification for the above-guidelines sentence.[7]

We review the reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is substantively reasonable in light of the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a)(2). The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant," and "the need to avoid unwarranted sentence disparities among defendants with

---

[7] Southall also asserts that the criteria for an upward departure under U.S.S.G. § 4A1.3(a) were not satisfied in this case. We need not address this argument because the district court did not impose an upward departure under § 4A1.3. Instead, it imposed an upward variance, which is different from an upward departure and not subject to the same requirements or criteria set forth in § 4A1.3. *See United States v. Hall*, 965 F.3d 1281, 1295–96 (11th Cir. 2020) (explaining that a variance is "when the court determines that a guidelines sentence will not adequately further the purposes reflected in . . . § 3553(a)" while a departure, which requires advance notice to the parties, is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" (quotations omitted)). Thus, § 4A1.3 had no application in this case.

similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6).

Importantly, the weight given to a particular § 3353(a) factor "is committed to the sound discretion of the district court," and it is not required to give "equal weight" to the § 3553(a) factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotations omitted). "We will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Rosales-Bruno*, 789 F.3d at 1256 (quotations omitted). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.*

No presumption of reasonableness or unreasonableness applies to a sentence that lies outside the advisory guidelines range. *Butler*, 39 F.4th at 1355. "Upward variances are imposed based upon the § 3553(a) factors." *Id.* "A district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quotations

omitted). "[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 552 U.S. at 46.

In reviewing the reasonableness of a sentence outside the guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51. "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* Rather, we will "vacate the sentence if, but only if, we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

Here, the district court did not abuse its discretion in varying upward from the applicable guidelines range of 57 to 71 months' imprisonment and imposing a sentence of 84 months' imprisonment. Southall argues that the guidelines range accounted adequately for the aggravating factors in this case and because of that those factors did not support a sentence above the guideline range. However, the district court was entitled to consider the aggravating factors and conduct present in this case

even if this information was already part of the guidelines calculation. *United States v. Overstreet*, 713 F.3d 627, 639 (11th Cir. 2013) (explaining that "a district court can rely on factors in imposing a variance that it had already considered in imposing [a guideline] enhancement" (alteration in original)).

Next, Southall argues that there was "no basis" for the district court to conclude that this case was atypical from other firearm-possession offenses. We disagree. The district court explained adequately why it considered this case to fall outside the mine-run firearm-possession case, particularly because Southall opened fire on an unarmed person on a public road and fired at least six shots, endangering the lives of many. We agree with the district court that these facts are egregious, and we discern no error in the district court's reliance on these facts in determining that this case was atypical from the mine-run possession of a firearm by a convicted felon case. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (explaining that a district court's decision to vary from the guidelines may merit the "greatest respect" when the sentencing judge finds the case to be "outside the heartland" of cases contemplated by the Sentencing Commission (quotations omitted)).

Although Southall also challenges the district court's determination that an upward variance was warranted based on his criminal history, that determination was well within the court's discretion. Specifically, the district court may "impose an upward variance if it concludes that the [g]uidelines range was insufficient

in light of a defendant's criminal history. When doing so, [the] district court[] [is] afforded broad leeway in deciding how much weight to give to prior crimes the defendant has committed." *Butler*, 39 F.4th at 1355–56 (quotations and internal citation omitted); *see also United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) ("Courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed, and [p]lacing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to consider are related to criminal history." (alteration in original) (quotations and internal citation omitted)).

Additionally, while Southall quarrels with the weight the district court gave to the § 3553(a) factors and maintains that the district court failed to consider his mitigating circumstances, the weight given to any one of the § 3553(a) factors was within the district court's discretion. *Rosales-Bruno*, 789 F.3d at 1254. Furthermore, Southall's allegation that the district court failed to consider his mitigating evidence is undermined by the record. The district court stated that it considered Southall's sentencing memorandum, which detailed the mitigating circumstances in great length, and Southall's counsel also discussed the mitigating circumstances during the sentencing hearing. Thus, the district court considered the mitigating circumstances, even though it did not mention that evidence when imposing Southall's sentence. *See also United States v. Amodeo*, 487 F.3d 823, 833 (11th Cir. 2007) ("[A]lthough the district court's sentencing order made no mention of evidence that arguably mitigated in [the defendant's] favor

under § 3553(a), we cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining [the defendant's] sentence.").

Finally, Southall's contention that the district court failed to provide a sufficient justification for the upward variance is unpersuasive. The district court made clear that it varied upward and imposed an 84-month sentence because a variance was warranted in light of the particularly egregious facts of this case and Southall's criminal history. Those considerations are proper § 3553(a) factors that the court should consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(1). Accordingly, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."[8] *Irey*, 612 F.3d at 1190 (*en banc*) (quotations omitted). Consequently, we conclude that Southall's sentence is substantively reasonable, and we affirm the district court.

**AFFIRMED.**

---

[8] We also note that, at the time of the offense, Southall faced a statutory maximum of 10 years' imprisonment. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2021). And his 84-month sentence is well-below this statutory maximum, which is another indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness).