[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11149

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LARRY DEWAYNE GOLDSMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:21-cr-00020-LAG-TQL-1

_____

Before WILSON, LUCK, and ABUDU, Circuit Judges.

PER CURIAM:

Larry Goldsmith appeals his 180-month above-guidelines sentence for attempting to entice and coerce a minor to engage in sexual activity. On appeal, he argues that the district court issued a substantively unreasonable sentence by imposing the upward variance without affording appropriate weight to his neuropsychological deficits, lack of criminal history, and the need to avoid unnecessary sentencing disparities. After review, we affirm.

## I.  FACTUAL  BACKGROUND  &  PROCEDURAL HISTORY

In 2021, a federal grand jury indicted Goldsmith with one count of attempting to entice and coerce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) ("Count 1"), and one count of traveling with intent to engage in illegal sexual contact, in violation of 18 U.S.C. § 2423(b) and (f) ("Count 2"). Pursuant to a plea agreement, Goldsmith pled guilty to Count 1.

In preparation for sentencing, a probation officer prepared Goldsmith's presentence investigation report ("PSI"), which outlined the offense conduct as follows. In June 2021, the grandmother of thirteen-year-old "M.P." contacted law enforcement to report M.P. missing. The grandmother reported that M.P. had stepped outside onto the porch and then disappeared, and she suspected that M.P. had left with someone she had been contacting on the phone. An hour later, M.P. was found on the side of the road,

appearing dazed and confused, and she reported that a male had forced her to do things, but she could not remember much. In a forensic interview, M.P. stated that she left home to meet "Ron," who she had been contacting on the phone applications Spotafriend and Snapchat, for sexual intercourse. She stated that Ron arrived, took M.P. to a wooded area, and made her drink something in which he had dissolved a white pill. She began going in and out of consciousness, but recalled being carried to the car, waking up in a hotel room, and later waking up in the grass. A toxicology report revealed the presence of Rohypnol, the "date rape" drug, in M.P.'s system.

The PSI further stated that M.P.'s telephone records contained 130 text messages from "Ron" between May 21, 2021, and June 3, 2021. The texts included Ron questioning M.P. about the geographical surroundings of her house and discussing M.P. taking a Lyft to meet Ron in Tennessee and plans for him to pick her up. Texts revealed discussions of M.P. joining Ron in Indiana or Chicago before Ron realized that M.P. would be unable to prove that she was eighteen years old for a plane ticket and Ron stating that M.P. should not bring her phone so that people could not track her. M.P. asked about school, and Ron stated that he would homeschool her until she could take the GED and that he could make money for them. Ron asked for pictures of M.P. on Snapchat and discussed the sexual activities he wished to do with her. Ron told M.P. that he had picked up his "ex" in the same way he planned with M.P., that his "ex" was fourteen years' old, and that he had accidentally impregnated her.

The PSI explained that investigators were able to link texts in M.P.'s phone to a number belonging to Goldsmith. Following his arrest, Goldsmith gave a statement in which he admitted to traveling to Georgia for the purpose of having sexual intercourse with M.P., communicating with her as "Ron," and believing her to be fourteen years old.

The PSI then calculated Goldsmith's total offense level by first determining that Goldsmith had a base offense level of 28, pursuant to U.S.S.G. § 2G1.3(a)(3). The PSI added two levels because the offense involved the use of an interactive computer service to entice or coerce a minor to engage in the prohibited sexual conduct. The PSI then applied a three-level reduction because Goldsmith demonstrated acceptance of responsibility and timely notified the government of his intention to enter a guilty plea. Thus, Goldsmith's total offense level was set at 27.

Goldsmith did not have any prior convictions, placing him in criminal history category I. However, the PSI noted that he had pending cases with active warrants for two instances of driving with a suspended license. The PSI also noted that Goldsmith had an active warrant out of the U.S. District Court for the Southern District of Indiana for transporting a minor with the intent of engaging in sexual activity. The PSI detailed that Goldsmith began communicating with a minor via Snapchat and Spotafriend, picked her up in Michigan, drove her to Indiana, and impregnated her. The PSI also explained that the indictment in that case was filed in August 2021, but because he was in custody for the instant case, he

had not made his initial appearance for the Southern Indiana indictment, and the warrant remained active.

The PSI also noted the following regarding Goldsmith's history and characteristics. Goldsmith's grandparents initially raised him because his parents were abusing illegal drugs when Goldsmith was born. Then, Goldsmith's father regained custody when Goldsmith was eleven years old. Goldsmith was diagnosed with ADHD, depression, anxiety, and insomnia at twelve years old, and he began using illicit substances at age thirteen.

Based on a total offense level of 27 and a criminal history category of I, the PSI set the guideline imprisonment range at 70 to 87 months' imprisonment. However, the statutory minimum term of imprisonment was ten years, and the maximum term was life. Thus, because the statutorily required minimum sentence was greater than the maximum of the applicable guideline range, the statutorily required minimum sentence of 120 months' imprisonment became the guideline sentence, pursuant to U.S.S.G. § 5G1.1(b).

In his sentencing memorandum, Goldsmith asked for the mandatory-minimum guideline sentence of 120 months' imprisonment. In support of his request, he submitted a psychological evaluation that he underwent that explained his deficits that resulted in his inability to appreciate the social consequences of his actions. The evaluation detailed that Goldsmith reported that his mother may have been intoxicated during her pregnancy with him, and that he had a difficult and unstable upbringing. The evaluation

indicated that Goldsmith suffered significant developmental issues early in his life based on his early separation from his mother, his dependency on frail and ailing grandparents, and his need to learn functional independence as a child.

The evaluation further explained that a neuropsychological assessment indicated Goldsmith had impairment of the frontal and temporal lobe brain functions, cognitive distortion and uncertainty, affective disturbance, hypomania with paranoid ideation, and substantial anxiety. The evaluation concluded that his impairments may be the result of prenatal toxicity and that Goldsmith lacked an internal emotional foundation which impaired his cognitive and social development. The evaluation concluded that these impairments affected Goldsmith's ability to appreciate the consequences of his actions and impaired his judgment.

At sentencing, the district court stated that it had reviewed the PSI, Goldsmith's sentencing memorandum, and the psychological evaluation, and the court confirmed that neither party had objections to the PSI. The court acknowledged Goldsmith's offense level and criminal history category, and that the advisory sentencing range was 120 months based on the statutorily required minimum term of imprisonment, to which neither party objected.

The government stated that it did not have a recommended sentence but acknowledged the 120-month mandatory-minimum. The government asked that the sentence reflect the seriousness of the defendant's conduct and the danger he posed based on his online coercion and enticement and his willingness to travel from

Indiana to Georgia to have sex with a child whom he gave Rohypnol. The government argued that the psychological report provided more concern about, rather than support for, a lower sentence because it showed that Goldsmith's judgment was compromised and that he may continue to engage in this conduct, highlighting the pending charges Goldsmith had for similar conduct in Indiana. The government contended that Goldsmith posed a great danger to the children of the community.

Goldsmith then read a letter to the court that he prepared, stating that he was sorry for the crimes he committed and that he was not aware of the impact he had on his victims at the time of his illegal conduct. He stated that he now understood the foolishness of his actions and would never do anything similar again. Next, Goldsmith's counsel explained that he sought out the psychological evaluation because of concerns about Goldsmith's deficits based on his reports of his mother's use of controlled substances while pregnant with him. His attorney then asked for the court to impose the guideline sentence of 120 months. He noted that Goldsmith may receive additional time in the Indiana case, so 120 months in this case would reflect the seriousness of the offense.

The district court stated that it considered the advisory range and the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense, Goldsmith's history and characteristics, the need to avoid unwarranted sentencing disparities, and the need to protect the public. The court stated that "this case [was] above and beyond" the average case of this kind under this

guideline and highlighted that Goldsmith traveled to engage in the illegal conduct with a thirteen-year-old and then actually did engage in that conduct by drugging her. The court stated that it could accept and understand that Goldsmith suffered cognitive and psychological difficulties as outlined in the psychological report, but noted its disbelief that Goldsmith did not understand what he was doing was wrong because he took countermeasures to avoid being caught by police. Accordingly, the court believed an upward variance was appropriate based on the § 3553(a) factors, and it sentenced Goldsmith to 180 months' imprisonment and 10 years' supervised release. Goldsmith objected to the procedural and substantive reasonableness of the sentence. His appeal followed.

## II.    ANALYSIS

We review for an abuse of discretion the substantive reasonableness of a sentence. *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020). The party challenging a sentence bears the burden of showing it "is unreasonable in light of the record and the § 3553(a) factors." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). A district court abuses its discretion in this context when it (1) fails to consider "relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment" by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted).

Section 3553(a) mandates that the district court "shall impose a sentence sufficient, but not greater than necessary," to

"reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "afford adequate deterrence to criminal conduct;" "protect the public from further crimes of the defendant;" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). In addition, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" the guideline sentencing range; any applicable policy statements; and the need to provide restitution to offense victims. *Id.* § 3553(a)(1), (3)-(5), & (7).

Finally, the court should also consider "the need to avoid unwarranted sentence disparities." *Id.* § 3553(a)(6). When considering a claim of disparity, we first consider "whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). One of the purposes of the Guidelines is to provide certainty and fairness in sentencing and "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009) (internal quotation marks omitted).

Our review "involves examining the totality of the circumstances" and whether the § 3553(a) factors support the sentence. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). We will only vacate a sentence as unreasonable if "we are left with a

definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted).

District courts have "discretion to decide how much weight to give each § 3553(a) factor." *Williams*, 526 F.3d at 1323. While the district court must consider all § 3553(a) factors, it "is permitted to attach 'great weight' to one factor over others." *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). Moreover, district courts may consider a wide array of information related to a defendant's background and character in imposing an upward variance. *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010). "[T]he district court, in imposing a variance, may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015). Further, "variances from the advisory guidelines range can sometimes be based on the sentencing judge's disagreement with whether a guideline properly reflects the § 3553(a) factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

A sentence outside of the guideline range is not presumably unreasonable, but we may consider the extent of a variance in our review of the reasonableness of a sentence. *Shaw*, 560 F.3d at 1237. A court selecting a sentence outside the guideline range must have

a justification "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. We give weight to a district court's decision to vary because the district court has substantial discretion "in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *Shaw*, 560 F.3d at 1238. A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021).

On appeal, Goldsmith contends that the district court imposed a substantively unreasonable sentence when it varied upward in crafting his sentence. He argues that the district court failed to properly consider his psychological deficits, his lack of criminal history, and the need to avoid sentencing disparities.

Here, the district court did not abuse its discretion in imposing the upward variance. The district court outlined the proper factors it considered, and acknowledged the mitigating evidence Goldsmith submitted, including his psychological evaluation. The district court accepted that Goldsmith suffered some cognitive deficits, but noted the steps Goldsmith took to evade detection. It was within the district court's discretion to give greater weight to the seriousness of Goldsmith's offense conduct, and the district court did not abuse its discretion in not giving greater weight to Goldsmith's psychological deficits or lack of criminal history. *Shaw*, 560 F.3d at 1237.

While Goldsmith argues that the district court's imposition of the above-guideline sentence ignores the need to avoid

sentencing disparities, his argument does not show a disparity exists between his sentence and those with similar records who were found guilty of similar conduct, and he instead points to more generalized statistics. *Docampo*, 573 F.3d at 1102. Additionally, the district court explicitly noted that it had considered the § 3553(a) factors, and that Goldsmith's case went "above and beyond" the typical case it had seen under that guideline. Finally, Goldsmith's above-guideline sentence is well below the statutory maximum penalty he did face—life imprisonment—thus further supporting the conclusion that his sentence is substantively reasonable. *Riley*, 995 F.3d at 1278. In this case, we are simply not "left with a definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190.

### III.    CONCLUSION

For the reasons outlined above, we **AFFIRM** Goldsmith's sentence.