[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10262

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KESHAWN JAMARLIN ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:23-cr-00006-AW-MAF-1

_____

Before WILSON, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Keshawn Robinson appeals his sentence of 480 months' imprisonment for six counts of Hobbs Act robbery, three 18 U.S.C. § 924(c) counts of brandishing a firearm during and in relation to a crime of violence, and one count of being a felon in possession of a firearm. At sentencing, the district court varied upward from the advisory guidelines range of 87 to 108 months and imposed six concurrent 228-month terms on the Hobbs Act robbery counts and a concurrent 180-month term on the felon in possession count.

Pursuant to § 924(c)(1)(A)(2), the district court also imposed three mandatory minimum 84-month, consecutive terms on Robinson's three firearm brandishing counts, for a total of 252 consecutive months. The 228 months (19 years) in concurrent terms on the first seven convictions combined with the 252 months (21 years) in consecutive terms on the three § 924(c) firearm convictions yielded the 480-month (40-year) total sentence.

On appeal, Robinson argues that the district court's upward variance was substantively unreasonable and that a reasonable sentence would be 252 months, representing the three consecutive 84 months on his § 924(c) convictions. After review, we affirm Robinson's 480-month sentence.

## I. BACKGROUND

### A.    Offense Conduct

Over an eight-day period between November 15 and November 22, 2022, Robinson, a convicted felon, committed a string of six robberies of various stores and restaurants in Tallahassee, Florida.  During the robberies, Robinson pointed a firearm at employees, demanded money from the registers, and sometimes threatened to shoot the employees if they did not comply.  The robbery spree ended only when police officers apprehended Robinson in his car with a firearm shortly after he had committed the last three robberies.

During an interview after his arrest, Robinson confessed to committing the six robberies.  Robinson explained that he committed the robberies to pay off a drug debt he accumulated before going to prison.  After Robinson's release from prison, the person to whom he owed the debt confronted him, gave him a firearm, and told him to "do what you gotta do" to satisfy the drug debt.

### B.    Charges and Guilty Plea

A federal grand jury charged Robinson with (1) six counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1, 3, 5, 7, 9, and 11); (2) six counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(a)(ii) (Counts 2, 4, 6, 8, 10, and 12); and (3) one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 13).

Pursuant to a written plea agreement, Robinson pled guilty to all six Hobbs Act robbery counts (Counts 1, 3, 5, 7, 9, and 11), three of the six § 924(c) firearm counts (Counts 2, 4, and 10), and the felon in possession count (Count 13). In exchange, the government dismissed the remaining three § 924(c) firearm counts (Counts 6, 8, and 12).

## C.    Presentence Investigation Report

The parties filed no objections to the presentence investigation report ("PSI").

Only two counts, Counts 7 and 13, were groupable under the Sentencing Guidelines. Specifically, the PSI grouped into "Group Count 1" the felon in possession offense in Count 13 with the Hobbs Act robbery in Count 7, pursuant to U.S.S.G. § 3D1.2(c), as closely related counts. The PSI calculated the offense levels for the remaining conviction counts separately.

For Group Count 1 and for each of the five other Hobbs Act robberies in Counts 1, 3, 5, 9, and 11, the PSI calculated a base offense level of 20, pursuant to U.S.S.G. § 2B3.1(a). For Counts 1, 3, and 9, the PSI explained that, although § 2B3.1(b)(2)(C)'s 5-level increase for brandishing a firearm typically would apply, it did not apply to these three robbery counts because those robbery sentences would be imposed in conjunction with the § 924(c) firearm offenses in Counts 2, 4, and 10. *See* U.S.S.G. § 2K2.4, cmt. n.4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge

of an explosive or firearm when determining the sentence for the underlying offense."). Thus, the Hobbs Act robberies in Counts 1, 3, and 9 had an adjusted offense level of 20.

For the Hobbs Act robberies in Counts 5 and 11, however, the PSI applied a 6-level increase under U.S.S.G. § 2B3.1(b)(2)(B) because Robinson "otherwise used" a firearm by pointing a firearm at employees at short range. The PSI explained that the 6-level increase applied to these two Hobbs Act robbery conviction counts because the corresponding § 924(c) firearm counts were "slated to be dismissed at sentencing." Thus, the Hobbs Act robberies in Counts 5 and 11 had an adjusted offense level of 26. Similarly, for Group Count 1 (Counts 7 and 13), the PSI applied § 2B3.1(b)(2)(C)'s 5-level increase for brandishing a firearm because the § 924(c) offense in Count 8 was "slated to be dismissed at sentencing." Thus, Group Count 1 had an adjusted offense level of 25.

For the three § 924(c) firearm offenses in Counts 2, 4, and 10, the PSI stated that, pursuant to U.S.S.G. § 2K2.4(b), the advisory guidelines sentence was the mandatory minimum prison term of 84 months (7 years) required by 18 U.S.C. § 924(c)(1)(A)(ii). Thus, the PSI did not calculate an offense level for these three § 924(c) firearm counts.

Pursuant to § 3D1.4, the PSI then took the highest adjusted offense level of 26 (from Counts 5 and 11) and applied a 4-level multiple-count increase, for a combined adjusted offense level of 30. After a 3-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b), the PSI recommended a total offense

level of 27 for the six Hobbs Act robberies and the felon in possession offense.

The PSI calculated that Robinson had a criminal history category of III. The PSI detailed Robinson's adult criminal history, including prior convictions for theft by taking and theft by receiving stolen property in July 2018 for which he was assigned 3 criminal history points and grand theft of a motor vehicle and robbery in August 2018, for which he was assigned another 3 criminal history points. According to the PSI, Robinson committed these prior offenses when he was 17 years old. Robinson received a 40-month prison sentence for the August 2018 convictions and was released on August 1, 2022, just three months before he committed the instant offenses at 21 years old.

The PSI also noted: (1) Robinson's juvenile convictions, including, *inter alia*, robbery with a firearm and attempted armed robbery, that did not result in any criminal history points; and (2) Robinson's involvement in an uncharged carjacking on August 22, 2022 in which he and another suspect used a gun to take cash from the driver, forcibly removed the driver from his car, and then fled in the car.

Robinson's 6 criminal history points resulted in a criminal history category of III. With a total offense level of 27 and a criminal history category of III, the advisory guidelines range for the felon in possession and six Hobbs Act robbery offenses in Counts 1, 3, 5, 7, 9, 11 and 13 was 87 to 108 months. The felon in possession offense in Count 13 carried a statutory maximum term

of 15 years and the Hobbs Act robbery counts carried a statutory maximum term of 20 years.

Each of the § 924(c) firearm offenses in Counts 2, 4, and 10 carried a statutory mandatory minimum term of 84 months, which had to be served consecutive to each other and to any other counts, for an aggregate of 252 consecutive months. Each § 924(c) count carried a statutory maximum sentence of life.

Putting all the counts together, the PSI stated that the guidelines imprisonment range was 87 months (plus 252 months) to 108 months (plus 252 months). The PSI explained that had Robinson been convicted of all 13 counts in his indictment, his advisory guidelines range for Counts 1, 3, 5, 7, 9, 11 and 13 would have been lower—57 to 71 months—because none of § 2B3.1(b)(2)'s firearm enhancements would have applied. But, in that circumstance, Robinson also would have faced six consecutive mandatory minimum 84-month terms—or 504 months—for the § 924(c) offenses in Counts 2, 4, 6, 8, 10 and 12. Thus, as the PSI noted, "by virtue of the Plea Agreement, [Robinson] benefit[ed] by foregoing an additional 252-month statutory consecutive term of imprisonment."

## D.    Sentencing

At sentencing, Robinson raised no objections to the PSI or the advisory guidelines calculations. Robinson requested a sentence of credit for time served plus a 252-month prison term. In mitigation, Robinson stressed: (1) his difficult childhood that included being raised by a single teenage mother and witnessing

violence, the shooting and murder of friends, and gang activity; (2) his ADHD diagnosis and discontinuation of psychotropic medication; (3) his involvement with a gang beginning at age 12 and with the juvenile justice system; and (4) his marijuana use and alcohol consumption beginning at age 14.

During his allocution, Robinson took responsibility for his serious crimes. Robinson said he has a strong family network, but he still needed to provide and care for his seven siblings. He acknowledged that his actions required consequences but hoped to "salvage some of [his] life in the future" for himself and his family.

The government presented testimony from a police detective who investigated Robinson's robbery spree. The detective stated that during some of the robberies, Robinson threatened and pointed a firearm at people in the establishments and that the victims believed the firearm was loaded. The detective confirmed that Robinson was a suspect in an August 2022 armed carjacking because his fingerprints were found on the driver's side of the stolen car and the victim identified Robinson in a photo line-up.

The detective testified that during the carjacking, two suspects approached the victim's car, held him at gunpoint, forced him from the car and to the ground, demanded money, stole $6,000 from him, and fled in his car. The suspect pointing the firearm became "very aggressive in his mannerisms to the point that the second suspect told [him] . . . [to] calm down" and "You don't have

to kill him." The victim reported that the gun was placed against his body, and he feared for his life.

The government requested an upward variance and suggested a life sentence. The government cited: (1) Robinson's almost immediate participation in an armed carjacking after being released from prison; (2) the "sheer multitude of offenses" that Robinson committed within months of his release from prison; (3) the "dozen or more victims that were accosted" and placed in life-threatening situations; (4) the robberies occurring during business hours; and (5) Robinson's "profound threat to the safety of the community."

The district court imposed a total sentence of 480 months (40 years), followed by 5 years of supervised release. The sentence was comprised of 228-month (19-year) terms for the Hobbs Act robbery offenses in Counts 1, 3, 5, 7, 9, and 11 and a 180-month term (15-year) for the felon in possession offense in Count 13, all to run concurrently, followed by three consecutive 84-month (21 years total) terms for the § 924(c) firearm offenses in Counts 2, 4, and 10.

The district court stated that it gave "serious consideration to a life sentence" but concluded that "the mitigation here led [it] away from that." In particular, the district court cited as mitigating factors Robinson's acceptance of responsibility, youth, and difficult upbringing. The district court acknowledged Robinson's sentencing request—"for time served for everything but the brandishing and 21 years on the brandishing [counts]"—but found

that sentence would be insufficient in terms of need for adequate punishment, protection of the public, and deterrence.

The district court stated that it had considered Robinson's sentencing memorandum, the PSI, the information presented at the hearing, and the 18 U.S.C. § 3553(a) factors and found that an above-guidelines sentence was appropriate to provide a "sufficient punishment" and to account for the seriousness of the offenses and Robinson's characteristics. To support the upward variance, the district court emphasized: (1) the Sentencing Guidelines' failure to "account for the level of criminal history," including Robinson's "additional convictions that [did not] score" points; (2) the timing of the offenses, including Robinson "getting out of a relatively serious prison sentence and then almost immediately offending"; (3) the number of robberies; (4) the long-lasting impact of the "fear and trauma" on the victims; (5) the "extremely dangerous" nature of the offenses; (6) the need for general and specific deterrence; and (7) the need to protect the public.

## II. DISCUSSION

On appeal, Robinson challenges the substantive reasonableness of his 480-month sentence.

### A. Substantive Reasonableness

We review the substantive reasonableness of a district court's sentence for an abuse of discretion, even when the sentence is above the advisory guidelines range. *United States v. Curtin*, 78 F.4th 1299, 1311 (11th Cir. 2023). We determine "whether the sentence is substantively reasonable given the totality of the

circumstances and the sentencing factors set out in 18 U.S.C. § 3553(a)." *United States v. Boone*, 97 F.4th 1331, 1338 (11th Cir. 2024).[1]

As the party challenging the sentence, Robinson bears the burden of showing the chosen sentence was an abuse of discretion. *Id.* at 1339. To do so, Robinson must show that "the sentence imposed by the district court lies outside the range of reasonable sentences dictated by the facts of the case and the relevant sentencing factors," not merely that a "lesser sentence would, in his opinion, be more appropriate." *Id.* at 1342-43 (quotation marks omitted). We will not reverse a sentence solely because we could reasonably conclude that a different sentence was more appropriate. *Gall v. United States*, 552 U.S. 38, 51 (2007). Rather, we will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors to arrive at an unreasonable sentence based on the facts of the case." *Boone*, 97 F.4th at 1339.

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the sentencing commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

In choosing a sentence, the district court must consider the § 3553(a) factors but the weight to give any particular factor or combination of factors is committed to its sound discretion. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254, 1259 (11th Cir. 2015). When the district court imposes a sentence outside the advisory guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. While we do not require extraordinary circumstances, we must "ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 47, 50. A major variance requires a more significant justification than a minor one. *Id.* at 50.

In imposing a variance, the district court "may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015) (quotation marks omitted). It may also consider "any information relevant to [a defendant's] background, character, and conduct." *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010) (quotation marks omitted). Finally, an upward variance "well below the statutory maximum" is an indicator that a sentence is reasonable. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quoting *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014)).

## B.    Robinson's Sentence

Robinson contends that his requested sentence of 252 months—the mandatory minimum for his three § 924(c) firearm

24-10262                Opinion of the Court                13

offenses in Counts 2, 4, and 10—was more than sufficient to meet the goals of sentencing.  He argues that the district court's decision to vary upward by "nearly twice" the advisory guidelines range for his Hobbs Act robberies and felon in possession offense in Counts 1, 3, 5, 7, 9, 11, and 13 was an abuse of discretion.[2]

As an initial matter, Robinson suggests the Sentencing Guidelines recommended a 252-month (21-year) sentence, but that is incorrect.  As stated in the PSI and by the district court at sentencing, the advisory guidelines range for the Hobbs Act robberies and felon in possession offense in Counts 1, 3, 5, 7, 9, 11, and 13 was 87 to 108 months.  The three consecutive mandatory minimum 84-month terms (or 252 months total) for the § 924(c) offenses in Counts 2, 4, and 10 were to be served consecutively to Counts 1, 3, 5, 7, 9, 11, and 13.  Thus, as to Counts 1, 3, 5, 7, 9, and 11, the district court imposed a 120-month upward variance from the top end of the advisory guidelines range of 108 months and imposed concurrent sentences of 228 months (19 years) on the six robberies.  And as to Count 13 (which had a 15-year statutory maximum) the district court imposed a 72-month upward variance and a 180-month sentence.

---

[2] In the "Summary of the Argument," Robinson's counseled brief states in conclusory fashion that his sentence "is cruel and excessive."  To the extent Robinson attempts to raise an Eighth Amendment claim, it is abandoned because he raised it only in passing and did not provide any supporting legal authority or argument. *See United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024).

Robinson has not shown that these upward variances, while substantial, were substantively unreasonable. According to the undisputed facts, Robinson, in order to pay a drug debt, robbed six establishments in eight days. During his crime spree, Robinson pointed a firearm at employees in each establishment, and sometimes threatened to shoot them, placing the employees in extreme danger and causing them to fear for their lives. Robinson went on this crime spree only a few months after completing a 40-month prison sentence for prior felony convictions.

Before imposing the upward variances, the district court considered the § 3553(a) factors, the PSI, the parties' arguments and requested sentences, and the plea agreement. The district court explained that it had considered all of the § 3553(a) factors, but found several factors weighed against Robinson's requested mandatory minimum sentence of 252 months, including the need for adequate punishment, public protection, and deterrence. The district court also rejected the government's request for a life sentence, citing Robinson's acceptance of responsibility, young age, and difficult upbringing.

The district court provided a sufficiently compelling justification for its decision to vary upward on Counts 1, 3, 5, 7, 9, 11, and 13. *See Gall*, 552 U.S. at 50. The district court explained that an above-guidelines sentence was needed due to: (1) the guidelines failing to account for Robinson's full criminal history, including serious juvenile and recent uncharged crimes; (2) the seriousness of Robinson's instant offenses, including their number, extreme

dangerousness, and long-lasting impact on the victims; and (3) the speed with which Robinson resumed criminal activity upon his release from prison.

Robinson argues that a 252-month sentence was sufficient, but the fact that "a lesser sentence would, in his opinion, be more appropriate" does not demonstrate that the district court abused its discretion, especially in light of the court's thorough explanation for its upward variance. *See Boone*, 97 F.4th at 1342-43. And, while the 120-month variance on Counts 1, 3, 5, 7, 9, and 11 is significant, it still was well below the statutory maximum of life imprisonment, which is a further indication of its reasonableness. *See Riley*, 995 F.3d at 1278.

In sum, given the seriousness of Robinson's current crimes, his extensive criminal history, and his rapid return to a life of crime, we cannot say the district court's decision to vary upward was unreasonable. Accordingly, we affirm Robinson's 480-month sentence.

**AFFIRMED.**