**NOT FOR PUBLICATION**

## In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12760

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

QUANTAVIOUS HURT,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:24-cr-00006-AW-MAF-1

_____

Before ABUDU, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Quantavious Hurt pleaded guilty to possessing a weapon while an inmate in a federal detention center. He now appeals,

challenging the reasonableness of his 42-month sentence. After careful review, we affirm.

## I. BACKGROUND

On June 6, 2023, a corrections officer at the Federal Detention Center in Tallahassee, Florida, found Hurt in the shower area fighting with another inmate, Johnny Winbush. A mesh bag containing rocks, which Hurt had concealed when walking to the shower, was laying on the ground. Hurt was also found with a large shank wrapped in a torn t-shirt and Winbush was seen lying naked in a large pool of blood, as he had been stabbed by Hurt several times. The officer was able to de-escalate this situation, placing Hurt and Winbush on separate sides of the unit and having Hurt discard the shank in a nearby laundry basket. However, shortly thereafter, Winbush retrieved another shank from his bunk and instigated another assault against Hurt.

As a result of these altercations, Hurt was charged with assault with a dangerous weapon with the intent to do bodily harm at a federal detention center, in violation of 18 U.S.C. § 113(a)(3) (Count One), and possession of a weapon as an inmate in a federal detention center, in violation of 18 U.S.C. § 1791(a)(2), (b)(3) (Count Two). Pursuant to a written plea agreement, Hurt pleaded guilty to Count Two in exchange for the dismissal of Count One.

Hurt's presentence investigation report ("PSI") provided a base offense level of thirteen, United States Sentencing Guidelines Manual § 2P1.2(a)(2) (Nov. 2023), but assessed a two-level decrease for acceptance of responsibility, *id.* § 3E1.1(a), which resulted in a

total offense level of eleven. The PSI also placed Hurt in criminal history category II based on his convictions for murder in aid of racketeering activity and aggravated assault with the intent to murder in aid of racketeering activity. Hurt's resulting guideline range was ten to sixteen months of imprisonment. He did not object to the PSI.

In a sentencing memorandum, the government indicated that Hurt and Winbush, who received the same charges, disagreed on who acted as the aggressor in the initial altercation. It provided surveillance video from FDC Tallahassee capturing the altercation between Hurt and Winbush, and submitted a transcript of Winbush's sentencing, which revealed that he received a downward variance of twelve months and one day of imprisonment because the sentencing judge found that Hurt was likely the aggressor.

In turn, Hurt filed a sentencing memorandum requesting a downward variance based upon several factors, including: (1) the need to avoid sentencing disparities; (2) the high risk for retribution for Hurt's cooperation in other proceedings and his previous experiences with assault; (3) his personal growth during incarceration; (4) his difficult personal history; (5) the fact that his conviction would likely terminate his participation in a "debrief" program within the Bureau of Prisons ("BOP") that allowed him to obtain placement in "a desirable facility" and "good behavior credits"; and (6) his cooperation with the government in the instant case.

At sentencing, the district court noted its review of the evidence offered by the government with its sentencing memorandum and adopted the PSI's guideline calculations. Hurt's counsel then reiterated many of his mitigating arguments, and stated that, before Hurt arrived at FDC Tallahassee, information had spread that "the snitch [was] going to be arriving," so Hurt felt he was "marked from the beginning . . . and . . . needed to take actions in order to . . . protect himself." Counsel further disputed that Hurt was the aggressor in the altercation and explained Hurt's belief that Winbush was going to attack him when he entered the shower. However, the district court was unsure what imminent risk Hurt believed he faced from Winbush, and remarked that, "at the end of the day, [Hurt's] guidelines . . . [we]re very low for the conduct that took place."

Hurt then personally told his story to the court. He explained that he and Winbush had already had an altercation over his cooperation in a different case and that he carried only the mesh bag into the showers to defend himself. According to Hurt, Winbush retrieved the shank from a pile of clothes when he saw Hurt enter the room. Hurt then swung the bag at Winbush and managed to wrestle the knife away from him. Hurt further asserted that FDC Tallahassee was "very corrupt," and the corrections officers had "laugh[ed] at [him]" when he tried to report his fears in the days leading up to the attack. He further highlighted some of the mitigating factors already discussed, noting that he never intended

to harm anyone, apologizing for his conduct, accepting responsibility, and explaining that inmates needed to protect themselves in the prison environment.

In response, the government noted that there were "two different stories depending on who you talk to," but the video was the best evidence of what had occurred and the one other inmate in the shower area only saw Hurt strike Winbush with the bag. It also noted that other inmates speculated that Hurt and Winbush had a personal dispute over money, and it acknowledged facts that could weigh in Hurt's favor, including that: (1) Hurt had claimed to see Winbush flash a bladed weapon a few days before the attack; (2) Hurt had heard that shanks were being stored in the shower ceiling tiles, which was later confirmed by prison officials; and (3) Winbush had a lengthy criminal history and BOP disciplinary record. However, the government stressed that it made little sense for Hurt to enter the shower area if he feared Winbush, especially carrying the bag of rocks.

The district court imposed a sentence of 42 months of imprisonment, to run consecutively to the separate 27-year sentence Hurt was currently serving. The court explained that the calculated guideline range did "not fully capture[]" the seriousness of the offense conduct and the nature of Hurt's criminal history. It elaborated that Hurt was the aggressor in a "very dangerous assault" and that there was no reason for Hurt to enter the showers if he feared Winbush. The court opined that, even if Hurt was not the aggres-

sor, he carried a weapon and "engag[ed] in this very dangerous altercation with another person in . . . a very dangerous environment." The court therefore found that both specific and general deterrence was an important consideration so "everyone else in any of these facilities . . . know[s] that people with these types of weapons . . . are going to face serious punishments."

The court further emphasized the importance of protecting the public, as Hurt was "a very dangerous person," his criminal history involved a murder, and he had a history of disciplinary problems while in prison. It also spoke to its consideration of Hurt's mitigating arguments and allocution, noting that Hurt cooperated with the government, neither Hurt nor Winbush were badly injured, and that Hurt accepted responsibility and was remorseful for his actions. Nonetheless, the court reasoned that "a [within] guideline sentence . . . would be insufficient punishment, would provide insufficient public protection and insufficient deterrence."

Hurt objected to the imposed sentence, and this appeal followed.[1]

## II. STANDARD OF REVIEW

When reviewing the reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51

---

[1] Hurt's counsel initially moved to withdraw from this case pursuant to *Anders v. California*, 386 U.S. 738 (1967). A member of this Court denied that motion and ordered briefing on the substantive reasonableness of Hurt's sentence.

(2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted).

## III. DISCUSSION

Section 3553(a)'s "overarching" instruction to courts is that any sentence must be sufficient, but not greater than necessary, to comply with the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). These sentencing purposes include the need to reflect the seriousness of the offense, promote respect for the law, sufficiently punish the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). A court must also consider the offense's nature and circumstances, the defendant's history and characteristics, the types of sentences available, the applicable guideline range, any pertinent policy statements from the Sentencing Commission, the need to avoid unwarranted sentencing disparities between similarly situated defendants, and the need to provide restitution to any of the defendant's victims. *Id.* § 3553(a)(1), (3)–(7).

Hurt contends that his sentence is unreasonable because the district court failed to adequately justify its upward variance, discounted several mitigating considerations, and placed undue

weight on his criminal history and the nature of the altercation with Winbush.[2] We disagree.

To the extent Hurt suggests that the district court improperly found that he was the aggressor in the initial altercation, we find no clear error in this factual determination. *See United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007) (explaining that a sentencing court's factual findings are subject to clear-error review). The government supplied video evidence showing Hurt holding something in his jumpsuit as he approached the showers, and, seconds later, he and a naked Winbush are seen struggling out of the showers as Hurt repeatedly attempts to stab Winbush with a shank. Further, Hurt did not dispute that he carried a hidden bag of rocks with him into the showers, which suggested that he was prepared for some form of physical altercation. *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) (A sentencing court's findings of fact "may be based on . . . facts admitted by a defendant's plea of guilty, undisputed statements in the [PSI], or evidence presented at the sentencing hearing.").

We therefore cannot say that it was clearly erroneous for the court to infer that Hurt was the aggressor in the initial altercation, even if Hurt's view of the facts—that he used the bag of rocks to defend himself and wrestled a shank away from Winbush—is also

---

[2] Hurt devotes a small section of his brief to the district court's failure to apply an additional one-level reduction to his offense level under U.S.S.G. § 3E1.1(b). We need not address this issue, however, as Hurt appears to concede that the court did not err in denying him this additional reduction.

reasonable. *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) ("A trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review." (citation modified)). In any event, the court did not solely rest on this conclusion and found that, regardless of the aggressor, the fact that Hurt carried a weapon and engaged in a "very dangerous altercation" in a "very dangerous environment" warranted a significant sentence.

The weight given to each § 3553(a) factor is left to the sound discretion of the district judge, *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015), and the record demonstrates that the court carefully considered the relevant factors and offered sufficient justification for its above-guideline sentence, particularly emphasizing the need for deterrence and protection of the public, *see United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). The court also specifically considered several mitigating factors, noting that Hurt likely would have received a higher sentence had he not accepted responsibility for his conduct, but still concluding that a within-guideline sentence would not satisfy the purposes of § 3553(a). *See Kimbrough*, 552 U.S. at 101. Regardless, the failure to address every potential mitigating consideration does not indicate that the court "erroneously 'ignored' or failed to consider th[at] evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).

Further, even though Hurt's calculated guideline range incorporated his criminal history, the district court was within its discretion to find that this range did not account for the dangerous

nature of his prior convictions and to place greater weight on the need for deterrence and protection of the public over other factors. *See Rosales-Bruno*, 789 F.3d at 1263. Hurt's 42-month sentence is also below the applicable statutory maximum of five years of imprisonment, which provides further evidence that it is reasonable. *See* 18 U.S.C. § 1791(b)(3); *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021).

In short, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (citation modified). We therefore find no abuse of discretion in the district court's imposition of Hurt's 42-month sentence.

## IV. CONCLUSION

We **AFFIRM** Hurt's sentence.